(No. 27368.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LELA JONES, Plaintiff in Error.

*Opinion filed November 19, 1943.*

JACOBY, PATTON, MANNS & COPPINGER, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and C. W. BURTON, State's Attorney, (FRED P. SCHUMAN, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the circuit court of Madison county of manslaughter under an indictment of one count charging murder. She brings the cause here complaining of errors in the admission of evidence and in instructions to the jury, and contending that her conviction of manslaughter was not justified by the record for the reason that there was no evidence which would reduce the crime, if any crime was committed, from murder to manslaughter.

The victim was James Jones, Sr., 51 years of age, plaintiff in error's husband. She was 27 years of age. They had been married for something over five years. Their married life had not been altogether smooth, as the evidence tends to show that he had cut or stabbed her several times:

On the evening of February 28, 1943, plaintiff in error and her husband went to a tavern in Alton where they met friends and consumed some liquor. The relations between them at the time were friendly. Between six and seven o'clock in the evening plaintiff in error announced her intention to go to another part of town but the deceased declined to go with her. She left him, stopping at two taverns where she drank beer and whisky with friends. About 10:30 in the evening she, in company with one Gus Wilson, went to the scene of the killing, a tavern and restaurant known as the "Cinderella Club." Upon entering she saw her husband sitting in a booth with several people, one of whom was Thelma Walker, also known as Thelma Sanders. It appears from the testimony of the plaintiff in error that some years before she and Thelma Walker had had difficulty which resulted in the latter cutting her across the face with a knife. When plaintiff in error saw her husband sitting with Thelma Walker and others, she turned and left the tavern. She returned after a few minutes, during which time the deceased left the booth where he was sitting, and went to the bar where he was standing when she next entered. There were a considerable number of people in the tavern, which was well lighted, and a music box of some variety was being played loudly. Some conversation took place between plaintiff in error and her husband, whereupon she took a knife from her handbag and stabbed him through the heart.

Her statement to the police was that she requested her husband to go home with her and that he had refused, and that she also accused him of being in the tavern with Thelma Walker. She stated that when she accosted him as to his being in company with the Walker woman, he made some "smart" remark and appeared to be reaching his hand for his pocket, calling her a black bitch and telling her that he would cut her guts out if she did not go away and leave

him alone, and that after she stabbed him he drew a knife and opened it, started toward her and fell to the floor.

The evidence of the State consisted of the testimony of several witnesses present at the time, and a signed statement of plaintiff in error. The evidence of the defense was the testimony of the accused. One of the witnesses for the State testified that he took the knife from plaintiff in error after the stabbing, and turned it over to a police officer. State's witnesses testified concerning the presence and actions of the accused but none testified to having seen her stab her husband. A police officer identified a statement signed by plaintiff in error a few hours after the killing. On objection to its offer in evidence the trial court, out of the presence of the jury, heard testimony of several witnesses relative to the taking of the statement. Plaintiff in error offered no evidence in rebuttal, though objecting to its admission in evidence on the ground that it was not shown to have been made freely and voluntarily. The statement was admitted in evidence. It consisted of three typewritten pages, signed at the bottom of each by the plaintiff in error and a number of witnesses. It stated that some ten years before, a girl known as Thelma Walker had cut the right side of her face because she found her talking to a friend of the Walker girl; that for over a month deceased had been running around with the Walker girl, though plaintiff in error had repeatedly told him to stay away from her. In the main her signed statement and her testimony on the stand were the same except that she testified that when she saw her husband reach toward his pocket and heard him threaten to cut her, she backed away as far as she could before stabbing him, while in her statement she said he had gotten out his knife after she stabbed him, saying nothing of her attempt to retreat. Her testimony in this regard was not corroborated by any testimony in the record. She testified that she and her husband had had trouble before and that

he had cut her a number of times with a knife, and that when he started for her with his knife she was in fear of bodily injury. The testimony of witnesses produced by the State shows that the husband's knife was found under his body. There is a dispute in the testimony as to whether it was open or closed.

There is no evidence in the record that tends to indicate that the confession made by plaintiff in error was not voluntarily and freely made. Those present at the time it was made and signed, and who signed it as witnesses, testified as to the manner in which the statement was taken, and, as we have said, she offered no evidence to the contrary. The decision of the court on the admissibility of a confession, when evidence had been heard as to the manner of its taking, will not be disturbed unless that decision is manifestly against the weight of the evidence on the subject. *People* v. *Goldblatt,* 383 Ill. 176; *People* v. *Fox,* 319 Ill. 606.

That plaintiff in error stabbed her husband, and thus caused his death, is not denied. Her defense was that she did it in self-defense. But as we have seen from the resumé of the evidence already made, and her own statement made following the killing, that deceased did not draw his knife until after she had stabbed him, it is clear that the jury was justified in concluding that there was not sufficient evidence of self-defense to raise a reasonable doubt as to her guilt.

Plaintiff in error also complains of instructions, particularly that defining manslaughter and submitting a form of verdict for manslaughter. Her counsel argue that in this case there was no evidence which would reduce this crime from murder to manslaughter but the only verdicts which could properly have been returned were of guilty of murder or not guilty.

It is argued that as plaintiff in error left the tavern upon seeing her husband in company with the Walker

woman, and later returned and stabbed him, there was an opportunity for the voice of reason to be heard so that the crime, if any was committed, was murder. It is the general rule that where the evidence admits of but one of two conclusions, either that the accused is guilty of murder or is innocent, the giving of instructions and form of verdict as to manslaughter is error when given at the request of the People, and requires reversal if the jury finds the accused guilty of manslaughter. (*People* v. *Newman,* 360 Ill. 226; *People* v. *Pokosa,* 342 Ill. 404; *People* v. *Hauke,* 335 Ill. 217.) It is also the rule in homicide cases that if there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter, an instruction defining that crime should be given. *People* v. *Papas,* 381 Ill. 90; *People* v. *DeRosa,* 378 Ill. 557; *People* v. *Pursley,* 302 Ill. 62.

To prove murder there must be proof showing that the killing was done with malice aforethought, either express or implied. (*People* v. *Bartley,* 263 Ill. 69; *People* v. *Bissett,* 246 Ill. 516.) The common factor found in murder and manslaughter is the unlawful killing of a human being. The presence or absence of malice is the element which distinguishes murder from manslaughter. *People* v. *Papas,* 381 Ill. 90; *People* v. *Lewis,* 375 Ill. 330.

The evidence without contradiction shows that the relations existing between plaintiff in error and her husband on the day of the killing, notwithstanding previous difficulties, were friendly up to the time when she came into the Cinderella Club and saw her husband sitting with the Walker woman. The evidence is conflicting as to the subsequent happenings bearing on the question of malice. She testified she asked her husband to go home immediately after her first entry into the tavern, and that he did not answer. Another witness testified that she merely said "hello" and walked out the front door. Still another witness testified she did not speak when she first came in.

She also testified that when she again entered the tavern her husband was standing at the bar and she again asked him to go home; that he called her vile names and threatened to injure her if she did not leave him alone. The evidence concerning when the deceased took his knife out of his pocket, is, as we have seen, conflicting, and presents a factual point for the jury to determine. If the jury believed that the husband made the first assault and plaintiff in error had acted solely in self-defense, as she testified, it would no doubt have acquitted her. That it returned a verdict of guilty of manslaughter indicates that it did not believe that she acted solely in self-defense but in heat of passion caused by the sight of the Walker woman with her husband. In this record there is evidence sufficient, if believed, to justify the jury in finding plaintiff in error guilty of manslaughter and it was not error to instruct the jury on that crime and submit to it that form of verdict.

It is also complained that instructions given in the language of the statute defining murder and malice ignored the defense of self-defense. A review of the instructions discloses that the jury was instructed as to the law of self-defense and while such an instruction was not embodied with the one defining murder, it is not necessary that all of the law of the case be embodied in one instruction. It is sufficient if, taken as a series, they properly inform the jury as to the law. (*People* v. *Grady,* 381 Ill. 224; *People* v. *Moriarity,* 380 Ill. 148; *People* v. *DeRosa,* 378 Ill. 557.) Taken as a series, the instructions informed the jury as to the defense of self-defense and did not nullify or ignore plaintiff's theory regarding that defense.

The record contains no error requiring a reversal of the judgment and it is affirmed.

*Judgment affirmed.*