(No. 32576.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN DANIEL BROWN, Plaintiff in Error.

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

BOOKWALTER, CARTER, GUNN & HICKMAN, of Danville, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and WILLIAM T. HENDERSON, State's Attorney, of Danville, (JOHN T. ALLEN, and HARRY L. PATE, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff in error, hereinafter referred to as defendant, John Daniel Brown, was indicted for murder in Vermilion County and a jury found him guilty of manslaughter. The trial court overruled his motion for new trial, entered judgment and passed sentence. Defendant assigns the verdict, judgment and sentence of manslaughter as error and contends the trial court erred in submitting to the jury instructions pertaining to manslaughter. Defendant contends that under the evidence he was either guilty of murder, or not guilty by reason of insanity.

On October 5, 1950, defendant shot and killed his wife, and on the following day was indicted for the crime of murder. On October 7, 1950, defendant was present in the circuit court of Vermilion County, given a copy of the indictment, and he then requested counsel. A few days later, the public defender, appointed as his attorney, filed a petition in the trial court alleging defendant was insane to the extent that he was unable to plead to the indictment and requested a jury hearing on this issue. On October 20, 1950, the jury, impaneled to hear evidence on said issue, returned a verdict finding defendant insane at the time of said hearing, and he was accordingly committed to the Security Hospital at Chester until he recovered from his insanity.

On January 4, 1952, defendant was returned to Vermilion County. On January 21, 1952, counsel for defendant applied for a jury hearing to determine the mental capacity of the defendant to plead to the indictment and to defend. A jury heard evidence presented on this issue on February 8, 1952, and rendered a verdict finding that defendant was on said date not an insane person. The court entered judgment on said verdict. Thereafter, on the same date, defendant was arraigned, given a copy of the indictment, a list of the witnesses, and entered a plea of not guilty. A trial of defendant was commenced March 10, 1952, and the jury's verdict found him guilty of manslaughter. Defendant's sole defense at the trial was that he was insane at the time of killing his wife. No motion in arrest of judgment was filed. A motion for new trial was filed and denied by the lower court, and defendant was accordingly sentenced to imprisonment in the penitentiary.

It is undisputed that on the morning of October 5, 1950, defendant shot his wife with a revolver inflicting a wound in the head which almost completely severed the spinal cord, killing her instantly. Another shot was fired, striking her in the head but did not penetrate the skull. Defendant's

brother and mother lived in the same house in Danville. The mother heard the shot fired, ran to the room occupied by defendant and his wife, and saw the deceased lying on the floor of the bathroom adjoining their bedroom. She immediately called the brother who quickly responded and found defendant sitting on the bed with a gun in his hands. The brother took this gun, put it in his hip pocket and called the police. At this time defendant told his brother, "Joe, if you had stayed out of here, I would have finished it all." The police arrived shortly thereafter. As his brother was about to give the gun to the police, defendant remarked, "Joe, that gun's cocked." The brother then carefully removed the gun from his hip pocket and noticed that the gun was cocked. The gun was fully loaded except for the two discharged shells. Defendant was then taken to the Danville police station.

Officer Christy, who had known defendant for several years, testified that at the time of the arrest he asked defendant why he had shot his wife and received the reply, "She told me she was going to leave me." Coroner Cole testifying to the same conversation, stated that defendant talked quite a bit for approximately two or two and one-half hours in the west room of the police station in the presence of officers and the State's Attorney and that defendant then said that deceased had talked about packing her things and leaving him because he had started drinking again.

The defendant, a mechanic and welder, thirty-two years of age at the time of trial, became afflicted with Raynaud's disease approximately two years before the killing. This disease is a severe paroxysmal, nervous disorder causing disturbance of the circulation, generally in the fingers, causing intense pain. In defendant's case it caused the ends of his fingers to have broken sores, running pus, with symptoms of gangrene. Defendant complained that for several months prior to the shooting he could not work

and sleep and that he was required to use narcotics and opiates to relieve his pain and to obtain a little rest. He told of traveling to various cities and consulting various doctors for the purpose of obtaining drugs. At Hines Hospital he was first denied narcotics and later given some to relieve his pain, and while there a sympathectomy was performed to relieve his pain. This operation consisted of cutting certain nerves along the spine that controlled the nerves to the fingers. The operation was apparently unsuccessful and failed to bring about the desired relief. Certain of the drugs taken by defendant were by mouth and some by hypodermic needle; some of the drugs taken were dilaudid, demerol and barbiturates. The drugs appeared to give but temporary relief and were taken in large and excessive quantities. Drs. English, Bennett and Jordan, the latter a psychiatrist, testified defendant was insane at the time of the shooting. Dr. Bennett stated defendant was insane for some time prior to the occurrence. Dr. Jordan classified defendant as a case of schizophrenia or dementia praecox. Dr. Jordan based his opinion for this classification on the fact that he did not believe defendant could possibly realize the type of pain of which he complained.

Dr. William H. Haines, a psychiatrist and expert in mental and nervous diseases in this State, testifying for defendant, stated that in his opinion defendant was not a case of dementia praecox or schizophrenia and that if defendant was insane at the time of the shooting the insanity was produced from the excessive use of drugs. However, on cross-examination Dr. Haines testified that if, shortly after the shooting, defendant told his brother to be careful because the gun was cocked, and that the gun in fact was cocked, and that further, in making a statement to the officers and State's Attorney within a period one and a half hours after the shooting, defendant displayed an accurate awareness and knowledge of where he was, his wife's name, his mother's name and various other details of his

previous history, he then was of the opinion that the defendant was in contact with his environment and that he was sane. It was stipulated at the time that the statement made by defendant at the police station was made within one and a half hours after the shooting, and it was further stipulated that officers Meeker, Scarlet, Christy and Cole were present at the time and, from their observations of defendant's general demeanor, it was their opinion that defendant was sane.

At the time of trial it appeared that the defendant had not only recovered mentally but had recovered from the Raynaud's disease condition and drug addiction.

Various assignments of error are now urged in this court by the defendant in respect to the trial court's giving of certain instructions pertaining to the defense of insanity. We have carefully examined each of such instructions and are unable to find any prejudicial error. We are satisfied that the jury was fully and properly instructed by the court. In addition, we doubt the propriety of the defendant's right to object in this court in respect to those instructions for the reason that the motion for new trial filed in the lower court assigned only one ground: "That the court erred in the giving of instructions to the jury, defining manslaughter, giving the penalty in the event that the jury found the defendant guilty of manslaughter and including in the form of verdict in said cause, a form wherein the jury might find the defendant guilty of manslaughter, when the only crime the evidence tended to show that the defendant could have committed in said cause, was murder."

This court, therefore, is now concerned only as to whether, under the evidence in the record in this case, the trial court was warranted in giving instructions pertaining to manslaughter. It is the general rule that where the evidence admits of but one of two conclusions, either that the accused is guilty of murder, or is innocent, the giving of instructions and form of verdict as to manslaughter is

error when given at the request of the People, and requires reversal if the jury finds the accused guilty of manslaughter. It is also the rule in homicide cases that if there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter, an instruction defining that crime should be given. *People* v. *Jones,* 384 Ill. 407.

In the case of *People* v. *Cochran,* 313 Ill. 508, at 519, this court declared, "From an examination of the authorities in this and other States we are of the opinion that the true rule is, that where intoxication is so extreme as to suspend entirely the power of reason and the accused is incapable of any mental action he cannot be convicted of any crime which involves intent or malice, but that he can be' convicted for committing, while in such state of intoxication, a crime which consists only of the doing of acts which are prohibited by law and in which intent, deliberation or malice is not an element." In the case at bar it appears from the record that defendant procured and consumed drugs voluntarily far in excess of those prescribed, and we are of the opinion that voluntary intoxication and voluntary drug addiction as shown in this case are similar conditions. In most cases, as in *People* v. *Minzer,* 358 Ill. 345, the defendant usually attempts to urge in this court that the killing is manslaughter rather than murder by reason of the mental condition due to intoxication.

In the case of *People* v. *Tanthorey,* 404 Ill. 520, at 531, we declared, "The evidence, in respect to his being intoxicated, must show it was so great as to entirely suspend his power of reasoning before a manslaughter instruction would be warranted." It clearly appears under the evidence and the verdict returned in this case that the jury believed defendant's condition to come within the foregoing rule. We fully believe that the evidence in this case warranted its conclusion. In the case of *People* v. *Griswold,* 405 Ill. 533, the defendant contended that the giving of instructions pertaining to manslaughter was error. We there held that

manslaughter instructions were warranted by the evidence and stated that the jury may well have deemed the evidence established beyond all doubt that the defendant killed while in the heat of a sudden passion he could not control, and which was devoid of malice that is a necessary element of the crime of murder. Where the evidence in a case is conflicting and the outcome depends upon the evaluation of the credibility of the witnesses, this court will regard the verdict of the jury as conclusive, especially when approved by the trial judge, and we will not interfere unless some fact or circumstance appears in the evidence from which we can say that some witnesses have been truthful and worthy of credit, while others have been untruthful or mistaken. (*People* v. *Colvin,* 294 Ill. 196.) The jury and trial judge observed the witnesses and heard them testify and were in a far superior position to judge the credibility of the witnesses and the facts in this case than a court of review. We cannot say that the jury and trial judge were not justified in returning a manslaughter conviction in this case, in light of the conflicting expert medical testimony and in view of the fact that defendant stated that he killed his wife upon her telling him that she was going to leave him and would not return. The fact that defendant at the time of trial testified he intended to kill his wife is not conclusive but merely another item of evidence for the jury's consideration. Nor is the defendant's contention, that this statement was not made by his wife but was a delusion on his part, in any manner conclusive.

In the case of *People* v. *Tilley,* 411 Ill. 473, we held that the offense of involuntary manslaughter includes the killing of a human being without any intent to do so, in the commission of an unlawful act. Even though in the *Tilley case* there was a stipulation to the effect that if it were proved defendant performed an abortion, then he agreed that the abortion was not necessary to save the life

of the deceased and no proof of criminal intent should be necessary, we held that the waiver or agreement entered into in the trial court does not eliminate any of the elements of the offense charged in that case. We further held in the *Tilley case* that while the statute contemplates that persons performing such acts (unlawful abortion causing death of mother) shall be guilty of murder when death results, it does not remove the offense from the definition of manslaughter. Defendant cannot complain that the jury convicted him of the lesser offense of manslaughter.

It is doubtful if defendant is in good standing in this court for the purpose of assigning and urging any error. Rule 38 of this court requires that the abstract filed in this court must be sufficient to present fully every error relied upon. Two lines on page 4 of the abstract state, "Motion for new trial filed March 27, 1952. Motion for new trial denied." We are unable to find any other reference in the abstract to the motion for new trial. The substance of the record should be abstracted so that it is not necessary to resort to the record to determine the issues presented. The court will not search the record to supply deficiencies in the abstract. Everything necessary to decide the questions raised on the appeal must appear in the abstract. Where the substance of the motion for a new trial is not shown in the abstract, this court should not consider the sufficiency of the evidence to support the verdict. The abstract of the record is the pleading of the party seeking to have such record reviewed upon appeal or by writ of error, and the error relied upon to effect a reversal of the judgment should be made to appear by the abstract. *People* v. *Mattei,* 381 Ill. 21, 24, 25.

For the foregoing reasons, the judgment of the circuit court of Vermilion County is affirmed.

*Judgment affirmed.*