(No. 36474.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LORENZO CANADA, Plaintiff in Error.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

EMILIE N. WANDERER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH · L. JANEGA and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Lorenzo Canada was indicted for murder in the criminal court of Cook County. A jury found him guilty and fixed his sentence at imprisonment for life in the penitentiary. A writ of error has been issued to review the conviction.

The only substantial question is whether the trial court erred in refusing to instruct the jury on manslaughter. It is well established that where the evidence in a murder prosecution would permit the jury to find defendant guilty of manslaughter rather than murder, it is reversible error

to refuse to give an instruction on manslaughter. *People* v. *Papas,* 381 Ill. 90; *People* v. *Scalisi,* 324 Ill. 131; *People* v. *Pursley,* 302 Ill. 62; *Smith* v. *People,* 142 Ill. 117.

Defendant Canada and William Cunningham, the deceased, were living in the same apartment building on November 27, 1960. Canada had an apartment on the first floor and Cunningham had one on the second floor. The stairway from the first floor to the second was described as consisting of about 10 steps to a landing, then 1 or 2 steps to another landing and then about 10 more steps to the second floor. They were engaged in a fight on the landing when the mortal wound was inflicted.

The defendant did not testify. The only witness who described the killing and the events preceding it was Irma Pickens. She was called by the People and gave this account. About 1:15 A.M. Canada and Cunningham began arguing because Cunningham had complained of the noise from the first floor. Canada walked upstairs with a broken glass in his hand and asked Cunningham why he was trying to start trouble. Canada turned, ran down to his apartment, came out with two knives in his back pocket, a bottle of liquid in one hand, a club in the other, and ran upstairs. Cunningham then ran to his room and returned with a hammer and hatchet, both in a raised position. The hammer hit a wall or table and broke. At this time the two were separated by some other men on the second floor.

Shortly after they had returned to their own apartments, Cunningham came downstairs and was about to leave the building when Canada came out of his apartment and started to argue again. The landlord arrived at this time and separated the two. Cunningham then left, returned about 2 o'clock with a lady friend and went to his apartment. About 3 o'clock Cunningham again left the building to take his lady friend home. He returned about 3:30 and Canada met him in the hallway on the first floor. He walked over to Cunningham with the club in one hand

and one of the knives in the other, put the knife about an inch and a half from Cunningham's chest and said, "I ought to run this right through you." About this time Sam Thomas, a tenant from the third floor came downstairs, told Cunningham, "it's not worth fighting over" and asked him to go upstairs. Thomas and Cunningham then went to Cunningham's room.

Canada, still on the first floor, walked back and forth talking about Cunningham and saying "I'm just as much man as you are. Why would you call me a freak. You know I'm just * * *" (The witness did not complete this statement.) Cunningham had come out of his apartment and was standing at the head of the stairs on the second floor when Canada again started up the stairs this time with the club in one hand and the knife in the other. The two met at the landing. Whether Cunningham was armed at this time was not brought out on either the direct or cross-examination of Irma Perkins. Canada, who was a step or two below Cunningham, pushed him once and then a second time. Cunningham then swung at Canada and knocked him to a kneeling position. When Cunningham lifted his right leg to kick him, Canada brought the knife up wounding Cunningham in the thigh. Cunningham then took the club, pushed Canada down the flight of stairs to the first floor, ran up to the second floor and fell at the door to his apartment.

Doctor Topia, a pathologist, testified that Cunningham died of a hemmorhage following a stab wound of the right thigh due to a laceration of the right femoral vein. He estimated the time of death to be between 5 and 30 minutes after the wound was inflicted.

On the basis of this evidence the court instructed the jury on murder and self-defense and refused to instruct on manslaughter.

Whether or not the decedent was armed with a deadly weapon when the mortal wound was inflicted could also have

been an important factor for the jury in arriving at its verdict. (*People* v. *Pursley*, 302 Ill. 62; *People* v. *Brown*, 392 Ill. 519.) The fact that Cunningham retreated to arm himself with a hatchet and a hammer the first time Canada started up the stairs with the club and bottle might have created a doubt in the minds of the jurors as to whether he went unarmed to meet Canada on the landing when the fatal wound was inflicted.

Under the facts of this case, we are of the opinion that the court erred in refusing to instruct the jury on manslaughter. The judgment of the criminal court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*