(No. 43300.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. GARY HANDLEY *et al.*, Appellants.

*Opinion filed March 30, 1972.*

LAWRENCE G. MARTIN, of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and HENRY A. HAUSER, Assistant State's Attorneys, of counsel), for the People.

ROBERT W. GETTLEMAN, THOMAS P. LUNING and WILLIAM J. MC NALLY, all of Chicago, for *amici curiae*.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Defendants, Gary Handley, William Slater, William Chavis, and Jerome Hardy were tried by a jury in the circuit court of Cook County and found guilty of the murder of Everett Weatherly, Jr. Defendants Chavis and Hardy were each sentenced to a term of 25 to 30 years in the penitentiary. Defendants Handley and Slater, who were minors, were each committed to the Illinois Youth Commission for like terms. Three other co-defendants with whom they were jointly tried were acquitted.

Testimony of the People's witnesses established that at approximately 11:30 P.M. on May 4, 1969, the victim, Everett Weatherly, Jr., was severely beaten by the defend-

ants in the presence of a large group of young people in front of the Starlite Grocerland store in the 3500 block of South State Street in Chicago. Blows were inflicted by fists, a bottle and a bicycle frame during a period estimated by one witness to be in excess of 20 minutes. When the police arrived at the scene, they observed the victim in a dazed and battered condition and put him in a squad car to take him to a hospital for medical treatment. However, he refused to be taken to the hospital, and the police then drove him to his home. The next day, he received medical attention at a clinic and was told to come back for a subsequent examination later that week. He returned to his home where he remained until May 8. At approximately 1:30 A.M. on that date he collapsed and was taken immediately to the emergency room of Provident Hospital where he was pronounced dead. A pathologist testified that death resulted from "multiple injuries extreme" to the head, neck and trunk caused by a physical beating sustained within a few days of his death. The defendants presented alibi defenses.

Defendants Handley and Slater were each fifteen years of age on the date the offense was committed. Pursuant to section 2—7(3) of the Juvenile Court Act (Ill.Rev.Stat. 1969, ch. 37, par. 702—7(3)), the State's Attorney filed petitions to remove each of them from the jurisdiction of the juvenile court so that they could be tried in the circuit court of Cook County, criminal division. In separate hearings on the removal petitions, the juvenile court judge heard the arguments of counsel, although no testimony was taken or other evidence presented. In each case the judge entered no objection to removal, and the juvenile court actions were dismissed.

On this appeal, defendants Handley and Slater contend that the circuit court of Cook County had no jurisdiction to try them for murder, since the removal provisions of section 2—7(3) of the Juvenile Court Act are unconstitutional. The pertinent part of that statute pro-

vides: "If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition." Defendant contends: (1) That the statute does not meet minimal procedural safeguards in that it does not specify standards on which a removal decision is to be based, does not require a hearing, and does not require a record of the reasons for the judicial determination not to object to removal; (2) that the provision giving the chief judge the right to review the juvenile court judge's objection to removal violates the independence of the juvenile court judge; and (3) that vesting discretion in the State's Attorney to decide whether or not to remove a juvenile from the jurisdiction of the juvenile court without providing any standards to limit his discretion deprives juvenile defendants of due process and equal protection under the law. In support of these contentions, defendant places primary reliance on *Kent v. United States (1966), 383 U.S. 541, 16 L.Ed.2d 84, 86 S.Ct. 1045,* in which the Supreme Court held that the District of Columbia Juvenile Court Act required a hearing before a juvenile could be removed from the jurisdiction of the juvenile court to be prosecuted criminally.

These issues were recently resolved by this court in *People v. Bombacino, 51 Ill.2d 17.* In that case we pointed out that the *Kent* decision involved construction of provisions of the District of Columbia Juvenile Court Act which were materially different from the provisions of the Illinois statute now in question. The statute in *Kent* vested discretion in the juvenile court to waive jurisdiction over the minor after a "full investigation." Section 2—7(3) of the Illinois Juvenile Court Act does not contain the "full

investigation" equivalent of the District of Columbia statute and does not vest jurisdiction in the court to determine the matter of waiver of jurisdiction. Rather, the State's Attorney is directed to determine whether a juvenile offender should be removed from the jurisdiction of the juvenile court for criminal prosecution, subject only to the right of the presiding juvenile court judge to object, in which event the matter is referred to the chief judge of the circuit for decision. Historically, the office of the State's Attorney has involved the exercise of a large measure of discretion in the many areas in which State's Attorneys must act in the performance of their duties in the administration of justice. We do not find it constitutionally objectionable that the legislature has seen fit to grant discretion to the State's Attorney in removal matters under the Juvenile Court Act, particularly in view of the fact that the purposes of the Act as set forth in section 1–2 of the Act (Ill.Rev.Stat. 1969, ch. 37, par. 701–2) and can be presumed to be considered by State's Attorneys in making determinations in these matters. We further conclude, as we did in *Bombacino,* that the due process hearing prescribed in *Kent* is not required at this stage of the proceedings in the juvenile court.

Our decision in *Bombacino* is also directly in point with respect to defendants' challenge to that part of section 2–7(3) of the Juvenile Court Act which provides for referral to the chief judge of the circuit in those cases where the juvenile court judge objects to removal. In this case, the juvenile court judge did not object to removal, and the matter was not referred to the chief judge of the circuit for decision and disposition. Since the defendants were not in any way aggrieved by these provisions, they clearly lack standing to challenge their constitutionality.

In the original trial of this case, the defendants' motion for mistrial was allowed after the court determined that some of the jurors had read newspaper articles or heard radio reports concerning the trial which may have

prejudiced them against the defendants. The case was immediately retried after denial of defendants' motions for discharge on the grounds that reprosecution would place them in double jeopardy in violation of the State and Federal constitutions and provisions of the Criminal Code. On this appeal, defendants contend that their motions for discharge were improperly denied.

In the original trial, the State's eighth witness refused to testify due to fear of reprisals by a youth gang. The witness was cited for contempt of court for failing to testify, and a contempt hearing was held. Although the Cook County State's Attorney, had not personally handled the prosecution of the case, he was present in the courtroom during the contempt hearing. Members of the news media were also present, and details of the contempt hearing were publicly reported as was a statement by the State's Attorney that he would seek a perjury indictment against a witness who had testified earlier. The defendants contend that the presence of the State's Attorney in the courtroom during the contempt hearing was unnecessary and served only to draw representatives of the press, radio and television to that hearing, and that this, together with his statement to the press, constituted prosecutorial misconduct which resulted in an "improper" termination of the trial within the meaning of section 3—4 of the Criminal Code. That statute provides in pertinent part that: "A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution *** was terminated improperly after the jury was impaneled and sworn ***." Ill.Rev.Stat. 1969, ch. 38, par. 3—4(a)(3).

After hearing argument of counsel on the defendants' motion for discharge, the court below made the following findings: "The Court finds that the action, the termination of the trial was not the action caused by the State's Attorney's office and having been based on articles which appeared in the newspapers or on television or on radio or

because of the fact the jurors themselves violated the admonition which the Court himself had previously given to the jurors, that is not to discuss this matter between themselves, the Court was of necessity compelled to grant the motion for a mistrial. But the Court in so doing finds that this action was not action caused by the State's Attorney."

We concur with defendants' basic premise that a mistrial which is necessitated by prosecutorial overreaching or impropriety designed to avoid an acquittal may well bar reprosecution. (See *United States v. Jorn (1971), 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547.*) However, the trial judge in this case, who was fully aware of the circumstances necessitating a retrial, determined that the mistrial was not the result of improper conduct on the part of the State's Attorney. On the record before us, we find no error in these findings, and the defendants' double jeopardy argument can not be sustained.

The defendants next contend that the trial court improperly refused to give manslaughter instructions which they tendered. It is well settled that if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, a manslaughter instruction tendered by the defendant must be given. *(People v. Canada (1962), 26 Ill.2d 491; People v. Harris (1956), 8 Ill.2d 431; People v. Brown (1953), 415 Ill. 23.)* It is equally well settled, however, that such an instruction should not be given if the evidence clearly demonstrates that the crime was murder, and there is no evidence to support a conviction of manslaughter. *(People v. Latimer (1966), 35 Ill.2d 178; People v. Marsh (1949), 403 Ill. 81; People v. DeRosa (1941), 378 Ill. 557.)* There was evidence in the record that the victim had knocked down two of his assailants and choked one of them during the struggle. However, this clearly was not a "one on one" situation but rather a case where the victim was surrounded and subjected to a beating by a number of persons over

an extended period of time. The crime of voluntary manslaughter requires evidence that at the time of the killing the defendant was acting "under a sudden and intense passion resulting from serious provocation." (Ill. Rev.Stat. 1969, ch. 38, par. 9—2.) Upon consideration of all the circumstances surrounding the incident in question, we do not believe that the victim's actions could possibly be considered a "serious provocation" for the beating he received. In refusing to give the tendered manslaughter instructions, the trial court determined that there was no evidence in the record from which the jury could have found the defendants guilty of manslaughter. We concur in that determination.

The defendants next contend that the trial court erred in refusing to permit cross-examination of Sutorise Wright, one of the State's witnesses, concerning a prior arrest on a burglary charge unrelated to the case at bar. The defendants argue that such cross-examination was proper in order to show bias on his part. It appears that Sutorise Wright was arrested on the burglary charge on May 11, 1969. Also arrested for the same charge was Ralph Lumpkin, one of the defendants acquitted in the instant case. At a hearing on the burglary charge, Wright was released on a recognizance bond while Lumpkin's bond was set at $2,500. Shortly thereafter, Wright apparently gave a statement to the police implicating the defendants in this case. On July 1, 1969, the charges against both Wright and Lumpkin were dismissed for want of prosecution.

The scope of cross-examination is generally a matter within the trial court's discretion. In the case before us, it is significant that there were no charges pending against Sutorise Wright when he testified. *(People v. Mason (1963), 28 Ill.2d 396.)* Furthermore, Wright and Lumpkin were both treated alike insofar as dismissal of the burglary charges against them was concerned. The attempted cross-examination in this case was apparently intended to show bias in that Wright had been released on a recog-

nizance bond while bond for Lumpkin had been set at $2,500. In refusing to permit the cross-examination, the court indicated its concern that such inquiry would result in the jury's being made aware of Lumpkin's prior arrest on the burglary charge which would be highly prejudicial to him. In view, of these various considerations, we are of the opinion that the trial court did not abuse its discretion in limiting the defendants' cross-examination of Sutorise Wright.

During the trial, Iris Beard testified as a witness on the defendants' behalf concerning events which occurred "at about 1:00 in the morning" on May 4, 1969. On motion of the People, the trial court ordered the testimony stricken and admonished the jury to disregard the testimony since it concerned events which occurred twenty-two hours prior to the offense for which the defendants were being tried and was therefore immaterial. On this appeal the defendants urge that the trial court erred in striking the testimony, since the witness had simply made a mistake as to time. From a reading of Iris Beard's testimony it is unclear whether or not the events she testified to were related to the beating of Everett Weatherly, Jr. The trial judge determined that the testimony was irrelevant to the case at bar. On the record before us we can not say that this determination was incorrect or that the trial court abused its discretion in directing that the testimony be stricken and admonishing the jury to disregard it.

The defendants further contend that the trial judge improperly denied their motion for a continuance in order to have witnesses present for a hearing in mitigation and aggravation prior to sentencing. On October 1, 1969, the guilty verdicts were read into the record, and the defendants' attorneys made an oral motion for a new trial. The trial judge set the matter over to October 16, 1969, and stated: "At that time, we will consider your matters and any other matters that will be presented to this court." On

October 16, the post-trial motions were argued and denied by the court. The trial judge then indicated that he was ready to proceed with a hearing on matters in aggravation and mitigation prior to sentencing. Counsel for the defendants stated that they had not understood that these matters would be heard on October 16 and requested a continuance so that they could arrange for witnesses to be present. The motion was denied and the court proceeded to conduct a hearing in aggravation and mitigation in which the trial court considered defense counsel's statements on behalf of each defendant and examined each defendant as to a variety of matters concerning their education and background. At the conclusion of the hearing, the sentences were imposed.

The record indicates that the trial judge intended that all matters necessary to dispose of the case in the trial court were to be heard on October 16. In support of their motion for a continuance, defense counsel did not indicate what witnesses would be present to testify if a continuance was granted or what the particular nature of their testimony would be. Under these circumstances, and in consideration of the hearing that was in fact held, we conclude that the defendants' request for remandment for a new hearing in mitigation and aggravation and resentencing is not warranted in this case.

Defendants' final contention is that the evidence did not establish their guilt beyond a reasonable doubt. In particular they argue that there were significant inconsistencies in the testimony of the State's witnesses who observed the beating, and that as to the extent of the victim's injuries the medical testimony of the physician who examined the victim the day after the beating did not correlate with the testimony of the doctor who performed the autopsy. Our review of the record reveals that while there was some inconsistent testimony with respect to what different witnesses observed at the scene of the beating, this testimony was not irreconcilable in view of

the fact that a large crowd was present and the incident lasted for a period of over 20 minutes. There was sufficient testimony which, if believed by the jury, positively established that the defendants committed the offense of which they were charged. We also find no substantial inconsistency in the medical testimony, and believe that it sufficiently established that the beating suffered by the victim in the late hours of May 4, 1969, caused his death in the early hours of May 8, 1969. The defendants' contention that their guilt was not proved beyond a reasonable doubt can not be sustained.

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*