(No. 50615.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JACK CANNON SIMPSON, Appellant.

*Opinion filed Dec. 4, 1978.—Rehearing denied Jan. 25, 1979.*

498

GOLDENHERSH, J., dissenting.

Richard J. Wilson, Deputy Defender, and Robert E. Davison, of the Office of the State Appellate Defender, of Springfield, for appellant.

William J. Scott, Attorney General, and C. Joseph Cavanagh, State's Attorney, both of Springfield (Donald B. Mackay and Melbourne Noel, Assisstant Attorneys General, of Chicago, and Robert C. Perry and Marc D. Towler, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant was convicted of murder in April 1973 after a jury trial in the circuit court of Sangamon County and sentenced to 25 to 75 years imprisonment. The appellate court reversed and remanded (39 Ill. App. 3d 661), but this court reversed the decision of the appellate court and remanded to that court for determination of issues raised but not reached in its original disposition of the case (68 Ill. 2d 276). Upon remand the appellate court affirmed defendant's conviction and sentence (57 Ill. App. 3d 442). We granted defendant's petition for leave to appeal under our Rule 315 (65 Ill. 2d R. 315).

Two issues are raised in the instant appeal: Whether the trial court erred in refusing to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter and whether the trial court properly refused special limiting instructions concerning defendant's admission, in addition to the general admissions instruction.

Defendant was charged with the murder of his paramour. He presented no evidence but argues that evidence contained in the State's case was sufficient to justify jury instructions on both voluntary and involuntary manslaughter.

Voluntary manslaughter is an unjustified killing committed while under a sudden and intense passion resulting from serious provocation; serious provocation is conduct sufficient to excite an intense passion in a reasonable person (Ill. Rev. Stat. 1977, ch. 38, par. 9—2). "It is well settled that if there is evidence in the record which, if believed by a jury, would reduce the crime to manslaughter, a manslaughter instruction tendered by the defendant must be given. (*People v. Canada* (1962), 26 Ill. 2d 491; *People v. Harris* (1956), 8 Ill. 2d 431; *People v. Brown* (1953), 415 Ill. 23)." (*People v. Handley* (1972), 51 Ill. 2d 229, 235; accord, *People v. Craven* (1973), 54

Ill. 2d 419, 425; *People v. Joyner* (1972), 50 Ill. 2d 302, 306; *Stevenson v. United States* (1896), 162 U.S. 313, 314, 40 L. Ed. 980, 981, 16 S. Ct. 839; *Ross v. State* (1973), 61 Wis. 2d 160, 169-73, 211 N.W.2d 827, 831-33.) It is also well settled, however, that such an instruction should not be given if the evidence clearly demonstrates that the crime was murder or nothing and there is no evidence to support a conviction of manslaughter. *People v. Craven* (1973), 54 Ill. 2d 419, 425; *People v. Handley* (1972), 51 Ill. 2d 229, 235; *People v. Jones* (1943), 384 Ill. 407, 412.

The resolution of the question of whether defendant was entitled to the voluntary manslaughter instruction depends in the final analysis upon a detailed consideration of the evidence (*People v. Burnett* (1963), 27 Ill. 2d 510, 511), and in this case, that evidence is contained solely in the State's case. Upon a review of the entire record in this case, and in particular that evidence relied upon by defendant, we cannot say there was any evidence which, if believed by the jury, would indicate that defendant acted upon serious provocation which would have excited a reasonable man to intense passion.

Defendant and deceased engaged in social drinking beginning at about 4 p.m. on a Sunday afternoon. At about midnight they were seen in a bar where they had a drink. The bar manager testified that defendant was not drunk and had no facial cuts. Between 1 and 1:30 a.m. the next morning, a deputy sheriff saw defendant and deceased engaged in a loud, verbal argument in a parking lot 250 to 300 feet from the bar. The officer saw defendant's face at close range, but observed no cuts or injuries. The officer told the defendant and deceased to go home and observed defendant enter the passenger side of deceased's car. The officer followed the car for a few miles because he felt the altercation might recommence.

Deceased's car was found off a county road at about

3:30 that morning. It was stuck in a ditch, heading in the direction of a lake. Her body was discovered under a bridge, down an embankment from her car. Blood stains were found on the panel of the passenger door of the vehicle. Deceased died from a single gunshot wound. The bullet entered through the upper lip and was fired from a distance of more than six or seven inches. The fatal wound was caused by a .38-caliber pistol bullet which could have been fired from a Titan Tiger .38 pistol. Defendant had purchased such a gun approximately seven months prior to the shooting. The deceased's body had other wounds, scratches or bruises, most of which occurred after death. A pathologist testified that deceased had .11% alcohol in her blood at the time of her death and that an individual may suffer some observable effects of alcohol with a .1% level of alcohol in the blood.

Defendant was next seen when he arrived at his estranged wife's trailer at 5 a.m. He had mud and briars on his boots and pants, a "deep gash" on the bridge of his nose, blood stains on his shirt, and abrasions on his right knuckles. He carried a bundle which contained clean clothing and deceased's purse. He cleaned up, changed clothing, and burned a bundle the size of a throw pillow.

The evidence shows that defendant and deceased had been arguing loudly and intently. However, mere words have never been held to be sufficient provocation to establish voluntary manslaughter. *People v. Crews* (1967), 38 Ill. 2d 331, 335; Ill. Ann. Stat., ch. 38, par. 9—2, Committee Comments—1961, at 206-07 (Smith-Hurd 1972); M.C. Bassiouni, Substantive Criminal Law sec. 8.1.1 (1978).

The evidence shows that at 5 o'clock on the morning of decedent's death, the defendant had a gash on his nose which he emphasizes could have been caused by decedent's fingernail. Evidence of mutual, physical combat has been held sufficient to require a manslaughter instruction.

(*People v. Craven* (1973), 54 Ill. 2d 419, 425; *People v. Canada* (1962), 26 Ill. 2d 491, 494; see also *People v. Crews* (1967), 38 Ill. 2d 331, 335; Ill. Ann. Stat., ch. 38, par. 9—2, Committee Comments—1961, at 206-07 (Smith-Hurd 1972); M.C. Bassiouni, Substantive Criminal Law sec. 8.1.1 (1978); W. La Fave and A. Scott, Criminal Law sec. 76, at 574 (1972).) But, as the Supreme Judicial Court of Massachusetts noted, in affirming a trial court's refusal of a voluntary manslaughter instruction, "[i]t is an extravagant suggestion that scratches by the wife could serve as provocation for a malice-free but ferocious attack by the defendant with a deadly instrument." (*Commonwealth v. Rembiszewski* (1973), 363 Mass. 311, 321, 293 N.E.2d 919, 926.) An abrasion on a knuckle normally bespeaks an injury which is self-inflicted. Blood on the door panel is not indicative of serious provocation. Scratches or bruises suffered by decedent before death do not demonstrate that defendant was aroused to intense passion by serious provocation.

The record fails to present any evidence of the sort of provocation which would have justified voluntary manslaughter instructions. There was no testimony of an exchange of blows (*People v. Craven* (1973), 54 Ill. 2d 419; *People v. Joyner* (1972), 50 Ill. 2d 302; *People v. Taylor* (1967), 36 Ill. 2d 483). There was no testimony of and corroborating evidence of a severe beating by the deceased upon the defendant (*People v. Harris* (1956), 8 Ill. 2d 431; *People v. Papas* (1942), 381 Ill. 90) or of a threatened attack (*People v. Pierce* (1972), 52 Ill. 2d 7; *People v. Jones* (1943), 384 Ill. 407). There was no testimony of an armed attack immediately prior to the fatal encounter to justify the jury in concluding that the deceased was armed at the moment of that encounter (*People v. Canada* (1962), 26 Ill. 2d 491). The evidence of provocation presented by the record here is more analogous in seriousness to that found in *People v. Izzo* (1958),

14 Ill. 2d 203, and *People v. Handley* (1972), 51 Ill. 2d 229, in which no instruction on voluntary manslaughter was justified. In the former there was a disagreement over a contract; in the latter the victim knocked down two assailants and choked one of them while being beaten by a group of persons.

Defendant contends that "the appellate court erred by holding that the defendant in a homicide prosecution who does not testify or present other evidence is prohibited from instructing the jury on manslaughter." We do not so understand the appellate court opinion. It held only that there was insufficient evidence in this case to justify manslaughter instructions. A defendant is entitled to such instructions if the record establishes a basis for them, irrespective of the source of the requisite evidence. (See *People v. Canada* (1962), 26 Ill. 2d 491, 492; *People v. Craven* (1973), 54 Ill. 2d 419, 425.) The record here, however, is devoid of evidence of serious provocation sufficient to excite a reasonable man to intense passion and justify a voluntary manslaughter instruction.

The crux of the offense of involuntary manslaughter is recklessness. (Ill. Rev. Stat. 1977, ch. 38, par. 9—3.) Although defendant did argue that he is entitled to an instruction on involuntary manslaughter, he states as well that "there was no direct evidence of any recklessness on the part of the defendant in this case which would establish involuntary manslaughter." We agree. Nor is there any circumstantial evidence of recklessness. Defendant was not entitled to an involuntary manslaughter instruction. See *People v. Dewey* (1969), 42 Ill. 2d 148, 157-58.

Defendant's final contention pertains to his police station response to his wife's accusation that he had told her he killed the deceased. Although in our first opinion in this case we held that the assistant State's Attorney's recounting of the wife's accusation and defendant's response was properly introduced as an admission (*People*

*v. Simpson* (1977), 68 Ill. 2d 276, 282), defendant now argues he was entitled to a special limiting instruction. We there held that the defendant's statement was an admission that he had told his wife he committed the murder; his wife's statement was necessary to place the defendant's statement in context. The jury was given the general admissions instruction which informed them: "You have before you evidence that the defendant made admissions of facts relating to the crime charged in the indictment. It is for you to determine what weight should be given to the admissions. In determining the weight to be given an admission, you should consider all of the circumstances under which it was made." Illinois Pattern Jury Instructions, Criminal, No. 3.06 (1968).

The appellate court, relying on our first opinion in this case, properly rejected defendant's argument that his statement went only to his credibility and that he was entitled to a limiting instruction to that effect. His statement was an admission and admissible as such (*People v. Simpson* (1977), 68 Ill. 2d 276, 282). Defendant argues here that the trial court erred in refusing his tendered instruction directing the jury to consider his wife's statement, not as proof of the fact stated, but only to give meaning to the defendant's reply. The wife's statement set forth what the defendant admitted having said. It was an intrinsic part of the admission. The jury was properly instructed by the pattern admissions instruction which placed upon it the duty to determine the weight to be given the admission. The admission was not hearsay (*People v. Newbury* (1972), 53 Ill. 2d 228, 234) and was directly relevant to the issue of whether defendant had committed the offense charged. The defendant's tendered instruction would have improperly impinged upon the jury's evidence-weighing function and would have improperly limited its consideration of the evidence. The trial court did not err in refusing defendant's instruction.

For the above reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

In my dissent to the first opinion in this case (68 Ill. 2d 276, 284-85) I stated that in my judgment the testimony concerning defendant's admission was inadmissible, and "Assuming, *arguendo,* that the testimony were in some manner rendered admissible, it should nevertheless have been excluded. There are many situations in which the admissibility of evidence depends upon whether its probative value outweighs its prejudicial effect to the defendant." The majority opinion demonstrates conclusively that by reason of this admission defendant was deprived of a fair trial.

In the original opinion the majority said: "The admission here was not that defendant shot Gwen, but that he had previously told his wife he had." (68 Ill. 2d 276, 282.) The instruction of which defendant complains told the jury: "You have before you evidence that the defendant made admissions of facts relating to the crime charged in the indictment. It is for you to determine what weight should be given to the admissions. In determining the weight to be given an admission, you should consider all of the circumstances under which it was made." As defendant argues, the admission that he had made a statement to his wife has now been transformed into an admission "of facts relating to the crime charged in the indictment." Without an additional cautionary instruction to the jury to the effect that this evidence showed only that he had made the statement to his wife and was not an admission of the commission of the offense, defendant could not possibly have received a fair trial. The conviction should be reversed and the cause remanded for a new trial.