THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARROLL YOHO, Defendant-Appellant.
Second District No. 2—86—0392

Opinion filed December 17, 1987.—Rehearing denied January 21, 1988.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of Elgin, and Robert J. Biderman and James W. Ackerman, both of State's Attorneys Appellate Prosecutor's Office, of Springfield, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Carroll Yoho, and his brother, Darrell, were charged in Winnebago County with the crime of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1). The brothers were tried jointly before a jury which returned a verdict finding defendant guilty of voluntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—2) and not guilty of murder. Darrell Yoho was exonerated of all charges.

At a sentencing hearing conducted on May 1, 1986, defendant was sentenced to a term of four years' probation, conditioned upon his serving 180 days in the county jail. Defendant was given credit for 160 days previously served. Additionally, defendant was fined $25 and costs to be paid within six months from release of custody and was ordered to pay a fine of $1,000 within three years. Defendant appeals.

In this court, defendant contends (1) that he was denied his right to a fair trial when the trial court allowed an autopsy photograph depicting the decedent's exposed heart within his chest cavity to be submitted to the jury for its deliberation, and (2) that he was entitled to a $5-per-day credit against his fine in addition to a credit against his

sentence of imprisonment for time served awaiting trial.

In the early hours of November 23, 1985, an altercation occurred between the Yoho brothers and the victim, Ron Gibson, at a tavern called "The Place" in Rockford, Illinois. The argument apparently commenced within the tavern and then wound up outside in the street, culminating in the stabbing death of Ron Gibson. Several witnesses for the prosecution related seeing the altercation between the two Yohos and Ron Gibson. An employee of the tavern, Scott Smith, testified that he saw something shiny in the defendant's hand. Jacqueline Jenkins, a patron at the bar, stated that she saw a man with a cane striking the decedent in the back of the head and also observed the defendant with a knife. Jenkins related that whenever Ron Gibson backed up, the other two men would advance upon him. She recalled that the man with the knife jabbed Ron Gibson in the chest area and that Gibson did not throw any punches but instead tried to block the blows from the defendants with his hands. Jenkins also saw the defendant stab the decedent in the back.

Another witness, Lauri Biladeau, testified that she saw the defendant strike the decedent at least three times with a knife and that at the same time Darrell Yoho was striking the decedent with his cane. According to Biladeau, Gibson had nothing in his hands.

Dr. Larry Blum, who performed the autopsy on the decedent, also testified for the State. Dr. Blum found knife wounds in the chest, in the bladder above the genitals, on the left side of the back, near the shoulder, in the left upper chest, over the left hip, on the scalp in the left parietal area, and on the penis. In addition to the knife wounds, Blum found multiple abrasions and contusions on Gibson's body as well as blunt trauma wounds. Blum described in detail the stab wound in Gibson's upper chest which punctured his heart. Blum also identified People's exhibit No. 11 as being a photograph of the internal organs of the chest, specifically showing the heart and the stab wound present in the right ventricle of the heart.

Three witnesses for the defendant, including Officer Charles Bishop, testified concerning prior incidents with Gibson which were illustrative of the decedent's violent nature. Other defense witnesses recounted decedent's behavior in the tavern on the evening in question, i.e., calling the defendant names, threatening the defendant with bodily harm, and insulting the defendant's wife. One witness, Phillip McCue, stated that he had seen the decedent in the parking lot at approximately 1:30 a.m. and that the decedent "said that he was having a disagreement and that he guessed he would be getting into a fight."

Carroll Yoho took the stand on his own behalf and testified that

on the date in question he had received "dirty looks" from the decedent. It was defendant's testimony that he called his brother Darrell, as he feared Gibson and his friends were going to fight him. Gibson did ask defendant to step outside and did threaten to beat defendant. When defendant went outside to meet his brother, the decedent advanced on defendant and struck him twice in the chest. The defendant had a knife in his hand and hit Gibson several times.

Defendant's witness Dr. William Rouse, a general and forensic pathologist, gave an opinion as to the ability of the heart to self-seal itself upon being punctured. He also testified as to the length of time a person could continue activity depending upon the size of the hole made in the person's heart. Rouse described the hole in Gibson's heart as portrayed in People's exhibit No. 11, an autopsy photograph depicting the exposed heart within the chest cavity, to be a middle-sized wound and surmised its size three-fourths of an inch long and about one-eighth of an inch wide. Rouse estimated that a person with a wound of that size could continue functioning for a period of time as short as a minute and as long as 7 to 10 minutes. In Rouse's opinion, an individual with a wound of this size would be able to continue fighting if he had already been fighting. The doctor also opined that the wound displayed in the photograph of the heart in People's exhibit No. 11 could continue to pump some blood throughout the victim's system while he continued acting.

The court permitted People's exhibit No. 11 to go to the jury over the specific objection of counsel for the defendant. Defendant contends on appeal that permitting People's exhibit No. 11 to go to the jury for its deliberations was prejudicial and denied defendant a fair trial. At trial defendant did not contest the fact that he stabbed the decedent since his theory of defense was self-defense. Defendant maintains that, when a defendant admits to an offense, gruesome photographs of a victim are rarely admissible since they are not probative of any material fact. See *People v. Lefler* (1967), 38 Ill. 2d 216, 221-22, 230 N.E.2d 827 (court erred in permitting autopsy photo showing an infant's chest cavity after the breastbone portion of the ribs, lungs, heart and main blood vessels had been removed and showing the skull and portions of the brain after an area of the skull had been removed to be projected on a 44- x 26-inch screen); *People v. Garlick* (1977), 46 Ill. App. 3d 216, 224, 360 N.E.2d 1121 (court erred in allowing a gruesome, color photograph of the deceased's massive head wound).

As a physician testified concerning the stab wounds and the undisputed cause of death, defendant argues that the autopsy picture had

no probative value and no purpose "other than to horrify the jurors and arouse their emotions against the defendant." (*People v. Coleman* (1983), 116 Ill. App. 3d 28, 36, 451 N.E.2d 973.) Relying on *People v. Jackson* (1956), 9 Ill. 2d 484, 138 N.E.2d 528, and *People v. Fierer* (1987), 151 Ill. App. 3d 649, 503 N.E.2d 594, defendant contends that the law is adamant that a photograph of a decedent taken after autopsy is not admissible. We do not agree.

 █ It is the function of the trial court to weigh the probative value of evidence and its potential prejudicial effect. (*People v. Greer* (1980), 79 Ill. 2d 103, 117, 402 N.E.2d 203; *People v. Partin* (1987), 156 Ill. App. 3d 365, 370, 509 N.E.2d 662.) Mindful of the prejudice that might be aroused by the introduction of a victim's photograph, courts have been strict in their requirement that a proper purpose be shown for the introduction of such an exhibit. (*Jackson*, 9 Ill. 2d at 490; *Garlick*, 46 Ill. App. 3d at 224.) The decision, however, of what shall be taken into the jury room rests within the sound discretion of the trial court and will not be disturbed absent a showing of prejudicial abuse. *People v. Shum* (1987), 117 Ill. 2d 317, 353, 512 N.E.2d 1183; *People v. Williams* (1983), 97 Ill. 2d 252, 292, 454 N.E.2d 220.

 █ Photographic evidence having a natural tendency to establish the facts in controversy is admissible, and it is not an abuse of discretion to allow a jury to consider photographs depicted as disgusting or gruesome. (*Shum*, 117 Ill. 2d at 353; *Garlick*, 46 Ill. App. 3d at 224.) The photograph in question was a color photo roughly 3½ x 5 inches, depicting a close-up view of the heart and its wound within what appears to be the chest cavity. It does not show the body generally, and, but for the presence of the heart and its stab wound, one would not be able to determine what exactly it represented. Thus, People's exhibit No. 11 was not of the gruesome nature as those areas displayed in the blown-up photographs in *Lefler* (38 Ill. 2d at 221). Moreover, we are of the opinion that the photograph in the instant case would have materially assisted the jury in understanding both Dr. Blum's and Dr. Rouse's testimony describing the wound to the heart and the result thereof. When taken in conjunction with an evaluation of all the photographs admitted, People's exhibit No. 11 would have materially gone to a fact in controversy, *i.e.*, defendant's claim of self-defense. Hence, the photograph's relevance outweighed any prejudice. Further, based on the record before us and the overwhelming evidence of defendant's guilt in comparison to the nature of this one contested exhibit, we can say beyond a reasonable doubt that the photograph did not contribute to the verdict of guilty and that, therefore, any error in its admission would be harmless.

■ Defendant next contends that he was entitled to $5-per-day credit against his $1,000 fine for each of the 160 days he spent in county jail awaiting trial in addition to the credit he received against his sentence of imprisonment. Defendant claims he is entitled to $800. The State maintains that to give defendant $5 per day would amount to a double credit for time served.

Section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 110—14) provides that any person incarcerated on a bailable offense who does not supply bail and against whom a fine has been levied on conviction for such offense is entitled to a credit of $5 per day for time served. The clerk of the court is required to notify a defendant in writing of this provision. Here, defendant was never notified by the clerk of the court that he was entitled to this credit.

Whether a defendant is entitled to a double credit for time served was decided by this court in the case of *People v. Love* (1986), 140 Ill. App. 3d 651, 653, 489 N.E.2d 393. In *Love*, we determined that the legislature could not have intended to accord a double credit only to the class of nonbailed offenders. In *People v. Holzhauer* (1986), 144 Ill. App. 3d 153, 494 N.E.2d 272, *leave to appeal allowed* (1987), 112 Ill. 2d 585, the Appellate Court for the Fourth District discussed the split of authority among the appellate districts in the interpretation of section 110—14 and chose to follow the reasoning of this district in *Love*. The court in *Holzhauer* determined that in fashioning section 110—14, the legislature could not have intended that credit be given against any sentence of imprisonment imposed as well as credit against a fine for only those defendants unable to post bail while requiring a defendant who was able to post bail to complete his full sentence of imprisonment and pay his entire fine. (144 Ill. App. 3d at 155-56.) The court reasoned that to allow such treatment would have the effect of penalizing a defendant who had been able to post bail.

Defendant, however, relies on the case of *People v. Young* (1981), 96 Ill. App. 3d 634, 635-37, 421 N.E.2d 968, to point out that prior to *Love* and *Holzhauer*, section 110—14 had been given its plain meaning and that the plain meaning of the statute requires that a defendant be allowed credit against the fine entered in his case as well as credit against his sentence of imprisonment. Defendant contends that since the legislature has failed to amend section 110—14 to express any intent contrary to that expressed in *Young*, this failure establishes that the *Young* decision represents the true expression of the legislature's intent and that, therefore, we should reconsider our decision in *Love*. Nonetheless, in *Love* we specifically noted that our holding was not in

agreement with *Young*, and as we have already determined that section 110—14 does not provide for double credit, we are constrained to follow that decision.

Lastly, we note that the probation order filed May 1, 1986, erroneously stated that the defendant was convicted of involuntary manslaughter. Likewise, the defendant's notice of appeal filed May 5, 1986, stated that he was convicted of involuntary manslaughter. Pursuant to the authority vested in us by Supreme Court Rule 366(a)(3) (107 Ill. 2d R. 366(a)(3)), we amend the probation order filed May 1, 1986, and the notice of appeal filed May 5, 1986, by striking the words "involuntary manslaughter" and substituting in lieu thereof the words "voluntary manslaughter."

Therefore, for the reasons stated above, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS and DUNN, JJ., concur.