THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD FICKETT, Defendant-Appellant.

First District (5th Division) No. 1—88—1798

Opinion filed September 28, 1990.

Stillo & Pechter, of Oak Lawn, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Eileen Rubin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Edward Fickett (Fickett) was charged with murder and concealment of a homicidal death. Following a jury trial the defendant was found guilty of murder and concealment of a homicidal death. Fickett was sentenced to 30 years with the Illinois Department of Corrections. On appeal Fickett contends that the trial court erred (1) in failing to suppress his arrest and statements he made to authorities, (2) in refusing to instruct the jury on voluntary and involuntary manslaughter, (3) in failing to find that the State failed to prove beyond a reasonable doubt the mental state required for a conviction of murder, and (4) in admitting various photographs.

For the following reasons, we affirm the jury's verdict and the sentence imposed by the trial judge.

The facts are as follows. The last time that Wendy Zukowski was seen alive was on November 16, 1986, at approximately 2 a.m. at Lizzio's Lounge in Chicago. Wendy Zukowski's body was found on Chicago's southwest side on November 22, 1986. Edward Fickett was indicted for her murder and the concealment of her body. He was found guilty of the crime on April 21, 1988, and thereafter sentenced.

Fickett first argues that his arrest and subsequent statements concerning the case should have been suppressed by the trial judge. With respect to his arrest he claims that it was not based on probable cause and therefore should have been suppressed.

The evidence on this point discloses that on November 20, 1986, a youth officer (Mikaitis) received a call of a missing person by the name of Wendy Zukowski (Wendy). Wendy had last been seen on November 16, 1986, at Lizzio's Lounge in Chicago. Mikaitis interviewed two patrons of the lounge who observed Wendy and Fickett dancing together in the lounge. One of the patrons stated that Fickett lived across from the lounge. On November 21, 1986, Mikaitis proceeded to 4740 W. 54th Street in Chicago. At that address William West told Mikaitis that on November 16, 1986, he had heard the door to the apartment that had been previously occupied by Fickett forced open. He also heard what he believed to be Fickett's voice and the voice of a female inside the apartment. Mr. West further stated that he saw Fickett attempting to fix the door of his former residence at about noon that same Sunday. Mikaitis relayed the information to an Officer Kill. Kill went to the lounge and interviewed Anderson, a patron who originally told Mikaitis that he had witnessed Fickett dancing with Wendy. On November 16, 1986, Kill spoke with a second patron who stated that he observed Fickett and Wendy leave the lounge at approximately 3:30 a.m. carrying drinking glasses. Kill then proceeded to the apartment and spoke to West, who repeated his conversation about the male and female voices. Inside the apartment Kill observed a turquoise shoulder pad and two glasses similar to the type used by Lizzio's.

Kill returned to Lizzio's, where he spoke to Ms. Dudek, who stated that she saw Fickett and Wendy dancing together on the 16th. Ms. Dudek gave a physical description of the clothing Wendy was wearing that evening. She described Wendy as wearing a black leather jacket, a hooded gray athletic sweatshirt, a turquoise and black bulky sweater, blue jeans and gym shoes. Ms. Dudek was shown the shoulder pad found by Kill in the apartment which she subsequently identified as being the same color and material as the sweater Wendy had been wearing on the night of the 16th.

While in Lizzio's, Kill was advised that Fickett had entered the lounge. At the suppression hearing Kill testified that he spoke with Fickett after he entered the lounge. Fickett stated that he was in the lounge on the 16th and had danced with Wendy. The two of them left the lounge and smoked a marijuana cigarette. The two returned to the lounge. Subsequently, Fickett observed Wendy near the front door. Fickett stated that she was standing with a male subject that fit his physical description. Fickett claims that Wendy told him that she was going to leave with the individual. During the discussion with Kill, Fickett advised Kill that he had "a couple of warrants on him

from the suburbs" and asked Kill if he could help him out. At this time Kill placed Fickett under arrest. At this time the remains of Wendy had not been located.

Fickett denied that he told the police of any outstanding warrants and argues that the arrest was on the basis of a pretext on the part of the police to cover their misconduct.

■■ ■ An appellate court occupies a different role than a trial judge in considering a trial court's order on a motion to suppress and must not overturn it unless it is manifestly erroneous. (*People v. Winters* (1983), 97 Ill. 2d 151, 158, 454 N.E.2d 299, 303.) Further, on a hearing on a motion to suppress, it is the function of the trial court, not this court, to determine the credibility of the witnesses and the weight to be given their testimony and the inferences to be drawn from the evidence. *People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733, 734.

■■ ■ Here the record reflects that the arresting officers based their initial arrest on defendant's statement that there were two outstanding warrants against him. The experienced trial judge obviously believed the officers' versions of the event rather than Fickett's. The test of whether the arrest was pretextual is not what the officers' real intent was but rather whether the police officers were authorized and legally permitted to make the arrest. An objective assessment of the officers' actions, not their state of mind, is what matters. When police officers do no more than what they are legally permitted to do, their motives are irrelevant and not subject to inquiry. The results of their investigations are not to be suppressed since the exclusionary rule is not applicable when officers act in a lawful manner, because evidence seized in violation of the fourth amendment is suppressed to deter unlawful police conduct. (*People v. Anderson* (1988), 169 Ill. App. 3d 289, 523 N.E.2d 1034, *appeal denied* (1988), 122 Ill. 2d 579, 530 N.E.2d 251, *cert. denied* (1989), 490 U.S. 1036, 104 L. Ed. 2d 407, 109 S. Ct. 1935.) Objectively viewed, the fact that Fickett had outstanding warrants gave the officers the right to arrest him even though they obviously desired to question him regarding the missing girl, Wendy. Having effecuated a valid arrest, there is no question that the police officers had the authority to transport the defendant to the police station and question him about another crime of which he might have knowledge. *People v. Anderson* (1984), 169 Ill. App. 3d 289, 523 N.E.2d 1034, *appeal denied* (1988), 122 Ill. 2d 579, 530 N.E.2d 251, *cert. denied* (1989), 490 U.S. 1036, 104 L. Ed. 2d 407, 109 S. Ct. 1935.

■ Defendant correctly states that mere knowledge by the police

officers that Fickett was the last to see Wendy was not a sufficient basis to arrest him. Yet in this case the police not only had information that Fickett was the last to see Wendy, they also knew of Fickett's forced entry into his former apartment, Fickett's return later that day to repair the broken door, the presence in the apartment of glasses of the type used by Lizzio's and seen carried out of the bar by Wendy and Fickett, and the presence of Wendy's shoulder pad in the apartment. This information plus the knowledge of the outstanding warrants was an adequate basis for the arrest. In deciding probable cause, the court deals with probabilities and is not disposed to be unduly technical. (*People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564.) When the police arrested Fickett, they possessed sufficient knowledge to believe that Fickett had something to do with the missing Wendy.

While Fickett was still in their custody, the police were informed of the recovery of Wendy's body. Fickett made both oral and written statements implicating himself in her death. Fickett argues that the statements were the result of physical abuse by the police officer, the denial of an attorney, the denial of a phone call and a promise of leniency. If Fickett's charges were true, his constitutional rights were seriously trampled on. Yet Fickett's charges were repudiated by the police officers and to some degree by the assistant State's Attorney who took his statement.

■■ ■ It has long been held that the question of the competency of a confession is for the trial court and not this or the supreme court. The findings of a trial court on the question of a confession's voluntariness will not be disturbed by a court of review unless they are against the manifest weight of the evidence. (*People v. Redd* (1990), 135 Ill. 2d 252, 292-93, 553 N.E.2d 316; *People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.) Illinois courts have viewed questions on suppression motions as primarily factual determinations that will not be reversed on appeal unless "manifestly erroneous" (*People v. Brooks* (1972), 51 Ill. 2d 156, 165, 281 N.E.2d 326, 332) or contrary to the manifest weight of the evidence. (*People v. Walton* (1990), 199 Ill. 2d 341, 556 N.E.2d 892.) The test is whether the confession has been made freely, voluntarily, and without compulsion or inducements of any sort or whether the defendant's will was overcome at the time he confessed. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) The decision of whether the confession resulted from fear of physical abuse is a factual determination to be made by the trial court based on the totality of the circumstances and will not be reversed unless contrary to the manifest weight of the evidence.

(*People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098.) Even if there is evidence of abuse, the statement will still be admitted if the prosecution can demonstrate that the confession was not the result of the physical abuse or threat of additional abuse. *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098.

██ ■ Although the Illinois Supreme Court has made clear that "an involuntary confession obtained by brutality or coercion is wholly unreliable and is the most flagrant violation of the principles of freedom and justice" (*People v. Hall* (1953), 413 Ill. 615, 624, 110 N.E.2d 249, 254), the question is still regarded as a factual determination by the trial court that will not be set aside except if contrary to the manifest weight of the evidence. (*People v. Joe* (1964), 31 Ill. 2d 220, 201 N.E.2d 416.) The State does not have the burden of proving the voluntariness of a defendant's confession by a preponderance of the evidence. (*People v. King* (1986), 109 Ill. 2d 514, 488 N.E.2d 949; *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223.) However, the mere assertion that a confession was obtained by duress does not mandate its exclusion. Rather, the issue becomes one of fact for the trial court to resolve. *People v. Byrd* (1961), 21 Ill. 2d 114, 171 N.E.2d 782.

██ Judged by the above standard we affirm the trial court's conclusion that Fickett's statements to the police about his involvement in Wendy's death were supported by the manifest weight of the evidence and not the product of police brutality, ignoring of rights and promises of leniency as testified to by Fickett. The policemen who testified to Fickett's arrest indicated that all of Fickett's rights were respected and that he was treated legally. Their testimony was supported somewhat by the assistant State's Attorney who took Fickett's statement and by the absence of any evidence of the physical torture Fickett claimed he endured. For this court to overrule the trial court's conclusion without having heard or observed the testifying parties would be an arrogant use of the court's powers unsupported by the legion of cases on the subject.

Fickett claims that the trial court erred in failing to give a voluntary or involuntary manslaughter instruction. His point on this issue revolves around the fact that on the fateful evening Wendy was intoxicated. Fickett testified that when he and Wendy arrived at his apartment Wendy was under the influence of both alcohol and marijuana. He testified that the two had sex in his apartment and that after it was over Wendy told him (Fickett) "I (Fickett) was going to pay her or she was going to call the police and put me in jail for rape." His testimony also indicated that Wendy hit him with a belt. Fickett be-

came mad, they struggled with the belt and then Fickett "put the belt around her to keep her from yelling." Fickett pulled the belt, and Wendy fell to the floor. Fickett panicked, could not find a pulse, picked her up and carried her outside to a vacant lot next door and placed a piece of cardboard over her.

■■ ■ It is well-settled law that if there is evidence of facts that reduce a charge of murder to manslaughter before a jury, the trial court must give the manslaughter instruction. (*People v. Petty* (1987), 160 Ill. App. 3d 207, 513 N.E.2d 486, *appeal denied* (1988), 117 Ill. 2d 549, 520 N.E.2d 390; *People v. Coleman* (1984), 124 Ill. App. 3d 285, 464 N.E.2d 706.) The general rule in Illinois is that the only categories of provocation which are considered sufficiently serious to reduce the crime of murder to voluntary manslaughter are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. (*People v. Petty* (1987), 160 Ill. App. 3d 207, 513 N.E.2d 486; *People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78.) Manslaughter is an offense whose definition has changed over the years. Effective July 1, 1987, the crime has been named "second degree murder" to desexify the definition. Ill. Rev. Stat. 1989, ch. 38, par. 9—2.

■■ At the time of Wendy's death and Fickett's trial, voluntary manslaughter was defined as follows in so far as it is applicable to this case.

"A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1985, ch. 38, par. 9—2.)

Other than the change of the name of the offense, the definition of the crime subsequent to July 1, 1987, is the same as it was prior thereto. Ill. Rev. Stat. 1989, ch. 38, par. 9—2.

It is noted that the instruction was refused on April 21, 1988, some months after the statute redefining the crime was made effective. It is further noted that if the trial court had given the manslaughter instruction with the instruction on murder it may have been reversible error. (*People v. Bolden* (1989), 181 Ill. App. 3d 481, 536

N.E.2d 1308.) Further, the new statute on second degree murder causes a slightly different instruction depending on the State's proof.

■■■ Fickett points to the evidence of Wendy's intoxication, her use of drugs and his testimony of his and her struggle as requiring the trial judge to give the manslaughter instruction. Although evidence which is believed by a jury which would reduce a crime from murder to voluntary manslaughter requires the instruction to be given, in this case the trial court properly refused the tendered instruction. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) It is also well settled that such an instruction should not be given if the evidence clearly demonstrates that the crime was murder or nothing and there is no evidence to support a conviction of manslaughter. (*People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373; *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1; *People v. Handley* (1972), 51 Ill. 2d 229, 282 N.E.2d 131.) The resolution of the question of whether defendant was entitled to the voluntary manslaughter instruction depends in the final analysis upon a detailed consideration of the evidence. (*People v. Burnett* (1963), 27 Ill. 2d 510, 511, 190 N.E.2d 338.) The record fails to present any evidence of the sort of provocation which should have justified a voluntary manslaughter instruction.

At best Fickett's testimony of Wendy being intoxicated on vodka and drugs and hitting him with a belt buckle suggests a mutual quarrel. However, we note that Fickett was a man 6 foot 2 inches tall and weighing 195 pounds while decedent was a woman 5 foot 5 inches tall and weighing 132 pounds. Even if the threat of Wendy's to report the incident as a rape if she were not paid were true, it would not be sufficient provocation to reduce Fickett's offense from murder to manslaughter. Mere words in themselves, however aggravated, abusive, opprobrious or indecent, are not sufficient provocation. *People v. Petty* (1987), 160 Ill. App. 3d 207, 210, 513 N.E.2d 486; *People v. Chevalier* (1989), 131 Ill. 2d 66, 544 N.E.2d 942.

Fickett correctly asserts that mutual combat is recognized in Illinois as adequate provocation, sufficient to reduce a homicide to voluntary manslaughter. (*People v. Leonard* (1980), 83 Ill. 2d 411, 415 N.E.2d 358.) However, even if Wendy hit Fickett with a belt buckle after their alleged sex session, such action does not raise to a level of sufficient provocation to amount to the type of mutual quarrel or combat that would reduce Fickett's crime to voluntary manslaughter. (*People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373.) The medical examiner testified that Wendy died of strangulation consistent with the belt buckle having been applied to her neck. Further, the tes-

timony tends to show that the marks on decedent's neck indicate that Wendy probably struggled for her life once the belt was around her neck. Fickett's own version of the event indicates he took the belt and put it around Wendy's neck. This, coupled with the medical examiner's testimony of the severity of the belt wounds around Wendy's neck, clearly negates the contention that Wendy's death was caused by a provocation sufficient to reduce the crime from murder to manslaughter or second degree murder as the crime was labeled in 1987. Thus, Fickett's contention that the court erred in refusing to give the jury a voluntary manslaughter instruction is without procedural or substantive merit.

Fickett also asserts that the trial court erred in refusing to instruct the jury on involuntary manslaughter. Involuntary manslaughter is described as follows:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly \*\*\*." (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).)

In this case Fickett testified that Wendy struck him in the head with a belt buckle, he became mad, they struggled with the belt and he put the belt around her to keep her from yelling. Fickett asserts that these actions could have been considered reckless and thus mandated an involuntary manslaughter instruction. (*People v. Consago* (1988), 170 Ill. App. 3d 982, 524 N.E.2d 989.) The Illinois revised statutes define "reckless" as:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1985, ch. 38, par. 4—6.)

We do not find a basis in the record to find that the act of pulling a belt around an individual's neck could have been considered reckless. The trial court properly refused to instruct the jury on either voluntary or involuntary manslaughter.

Fickett also argues that the State failed to prove him guilty beyond a reasonable doubt. He bases this charge on the contention that the State failed to prove the requisite mental state required to sustain a conviction of murder. He bases this contention on the evidence that

Wendy was under the influence of alcohol and marijuana, on his own testimony that Wendy threatened to call the police and put him in jail for rape, on his testimony that Wendy hit him in the head with his belt buckle, and on his testimony that, in the course of struggling, Fickett "put the belt around her to keep her from yelling and that he applied force only once."

 The State does have the burden of proving a defendant's intent in a murder case. Yet that burden is met when the State has established that the defendant voluntarily and wilfully committed an act, the natural tendency of which is to cause death or great bodily harm. (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606.) Since proof of defendant's intent to kill can rarely be based on direct evidence, such intent may be established from the surrounding circumstances, including the character of the assault. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098; *People v. Woods* (1978), 62 Ill. App. 3d 381, 378 N.E.2d 1271.) Proof of a motive is not necessary. (*People v. Pappas* (1978), 66 Ill. App. 3d 360, 383 N.E.2d 1190, *cert. denied* (1979), 444 U.S. 843, 62 L. Ed. 2d 55, 100 S. Ct. 85.) Further, it is the function of the trier of fact (in this case the jury) to assess the credibility of the witnesses to determine the weight of and inferences to be drawn from the evidence. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) The appellate court cannot act as a thirteenth juror and retry a convicted defendant when he on appeal raises the sufficiency of the evidence. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Finally, a reviewing court is bound to consider all the evidence in a light most favorable to the prosecution and then it must determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

 █ Based on these well-settled guidelines in a criminal case, we conclude that this record and the evidence presented by the State disclose that Fickett's mental state was sufficient to support the murder conviction. Intent to kill or cause great bodily harm in a homicide case is not often proved by direct evidence. Intent is a state of mind, which can be inferred from surrounding circumstances. (*People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024; *People v. Terrell* (1984), 99 Ill. 2d 427, 459 N.E.2d 1337.) The defendant is presumed to intend the natural and probable consequences of his acts, and evidence that the defendant committed a voluntary and wilful act which has the natural tendency to cause death or great bodily harm is sufficient to prove the intent required for the offense of murder. (*People v. Foster* (1987), 119 Ill. 2d 69, 518 N.E.2d 82.) In *People v. Terrell*

(1984), 99 Ill. 2d 427, 459 N.E.2d 1337, the defendant was convicted of attempted armed robbery of a service station. As the specific intent to commit the completed crime is an element of the attempt, the defendant argued that his intent to commit armed robbery had not been proved beyond a reasonable doubt. The court disagreed and held that the jury could infer the necessary intent from the surrounding circumstances. The evidence that Fickett killed Wendy after a night of drinking and dancing is undisputed. The only evidence of Fickett's mental state was his testimony that Wendy threatened to accuse him of rape and struck him with a belt buckle after which he took his belt and strangled her to death. Afterwards he concealed her body in the lot next to his apartment building, covering her body with a piece of cardboard.

As indicated before, Wendy's acts, even if true and believed by the jury, would not have been adequate provocation to reduce Fickett's crime from murder to a lesser offense. In this case, even if there were no evidence of Fickett's intent, a legal intent sufficient to sustain Fickett's conviction of murder by the jury could be inferred from the character of his acts and the circumstances surrounding those acts. Wendy Zukowski's cause of death was ligature strangulation. Fickett himself testified that he put his belt around Wendy's neck and pulled it until she fell to the ground, dead. Fickett's act of pulling a belt around Wendy's neck clearly was a voluntary and wilful act.

In his final point Fickett argues that photographs of the decedent and himself were improperly admitted into evidence. The photographs admitted over defendant's objection were: one 8-inch by 10-inch color photograph of Wendy while alive, one 4-inch by 4-inch black and white mug photograph of the defendant, and three 5-inch by 7-inch and seven 8-inch by 10-inch color photographs of Wendy's face and neck. Fickett argues that the photographs admitted by the trial court were extremely prejudicial and cumulative. Fickett asserts that the prejudicial value of the photographs outweighed their probative worth.

■■ The general rule regarding admissibility of photographs depicting the condition of the decedent was set forth in *People v. Jenko* (1951), 410 Ill. 478, 102 N.E.2d 783:

> "Evidence having a natural tendency to establish the facts in controversy should be admitted. A party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury. Any testimony concerning the details of a murder or other violent crime may have such tendencies, but manifestly this could not suffice to render it incompetent. Of course, where spectacular exhibits having little

probative value are offered they should be promptly excluded. But questions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant." *Jenko*, 410 Ill. at 482, 102 N.E.2d at 785.

■■ ■ The admission of photographs in murder cases has been the subject of many opinions. They are admissible even if they may arouse human horror and the indignation of the jury provided that they have a probative value. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) It is well established that the admission into evidence of a photograph of a murder victim is within the sound discretion of the trial court, and when the photograph is relevant to establish any fact in issue, it is admissible despite its gruesome nature. (*People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121; *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208; *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.) It is the function of the trial judge to weigh the probative effect and potential prejudicial effect of photographic evidence, and his decision will not be reversed absent an abuse of discretion. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) The photographs in this case, even if considered as gruesome as Fickett suggests, were properly admitted to disclose the wounds Wendy suffered. The photographs tended to demonstrate the number and the location of the wounds, the manner in which they were inflicted, and the wilfulness of the acts in question. To some extent the photographs also demonstrated that there was no mutual combat between the parties as contended by Fickett.

Even if we were to hold that the trial judge erred in admitting the photographs (which we do not), the error is harmless in light of the overwhelming evidence of guilt. *People v. Yoho* (1987), 164 Ill. App. 3d 17, 517 N.E.2d 329.

For all of the above reasons, we affirm the conviction and sentence.

Judgment affirmed.

COCCIA, P.J., and GORDON, J., concur.