Rule 23 order filed
July 16, 2015;
Motion to publish granted
August 20, 2015.

2015 IL App (5th) 120401

NO. 5-12-0401

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
    )    Circuit Court of
    Plaintiff-Appellee,    )    Perry County.
    )
v.    )    No. 10-CF-82
    )
JAMES GLAZIER,    )    Honorable
    )    James W. Campanella,
    Defendant-Appellant.    )    Judge, presiding.
_____

PRESIDING JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, James Glazier, was convicted of first-degree murder after a stipulated bench trial in the circuit court of Perry County and was sentenced to 60 years in prison. The defendant was 17 years old at the time of the murder; the victim was 15.

¶ 2    The defendant raises numerous issues on appeal, the first being that the evidence presented at the stipulated bench trial was insufficient to prove him guilty of first-degree murder in that he did not have the specific intent to kill the victim. The defendant also contends the automatic transfer statute of the Illinois Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2010)) violates the United States and Illinois Constitutions

1

because all 17-year-olds charged with first-degree murder are treated as adults during prosecution and sentencing without any consideration of their youthfulness. The defendant further argues that his 60-year sentence was excessive in light of his age, his lack of prior criminal history, his secondary role in the offense, and his strong potential for rehabilitation. The defendant also finds fault with his counsel at sentencing in that counsel agreed with the State to the maximum sentence of 60 years and completely failed to advocate on the defendant's behalf for a lesser sentence. Lastly, the defendant argues that he has been required to register as a sex offender even though the trial court made no finding that the first-degree murder was sexually motivated. We affirm, but remand for a determination as to whether the murder was sexually motivated and whether the defendant is required to register as a sex offender.

¶ 3 We initially note, as previously stated, this case was presented as a stipulated bench trial. During a pretrial conference, defense counsel stated that he would be presenting the defendant's case as a stipulated bench trial because his primary objective was to preserve for appellate review the issue of whether the defendant's statements to the police were properly obtained. The issue pertaining to the suppression of the defendant's statements to the police, however, is not before us. Accordingly, the facts recited herein are taken both from the stipulated statement of facts and the defendant's statements to the police.

¶ 4 According to the stipulated statement of facts, on July 25, 2010, two fishermen contacted the police to report that a badly decomposed body was floating in the creek near the Beaucoup Creek Bridge. After being recovered, the body was identified with the

use of dental records as the victim, Sidnee Stephens. The autopsy listed the cause of death as "homicidal violence."

¶ 5     As part of their investigation into Sidnee's murder, the police questioned various members of the P-Town Saints, a local gang. One of the leaders of the gang, Carl, gave a statement implicating the defendant in Sidnee's murder. The defendant denied the allegations and ended the interview with a request for an attorney. Later in the day, the defendant's mother arrived at the police station requesting to speak with her son. She was permitted to speak with him, and shortly thereafter, the defendant agreed to waive his rights and gave a recorded confession pertaining to his involvement in Sidnee's murder.

¶ 6     The evidence revealed that on Sunday, July 18, 2010, the defendant was hanging out with other members of the P-Town Saints, specifically, Carl, who was 18 years old, and Robbie, who was 15 years old. Carl was second in command of the gang, while the defendant was third in line. For the past three weeks, the defendant had been staying with Carl at the house belonging to Carl's grandfather. Because Carl did not have a driver's license, the defendant drove Carl everywhere.

¶ 7     During the evening of July 18, Carl, Robbie, and the defendant were driving around town when Carl suddenly announced that they were going to kill Sidnee. Carl had a .22 semi-automatic in his pants and allegedly told Robbie and the defendant, according to the defendant, that if they did not cooperate, he would shoot them "on the spot." Also, according to the defendant, Carl further threatened Robbie and the defendant that if they ever talked, he would kill them as well.

¶ 8    The three arrived at Sidnee's house around 1 a.m. on July 19. The defendant entered the house through an unlocked patio door and opened another door for Robbie and Carl to enter. The defendant started to wake Sidnee but then jumped on her when she tried to scream. In order to keep her quiet, he put his hand over her mouth. The defendant then taped her hands and mouth. While doing so, the defendant put his arm around Sidnee in a choke hold with the bend of his elbow around her mouth. Sidnee passed out. The defendant believed Sidnee passed out because he may have been choking her too hard. While Sidnee was unconscious, the defendant and Robbie dragged Sidnee's body through the yard. When Sidnee came to and tried to yell again, the defendant and Robbie got back on top of her. The defendant held her down until she passed out again. Carl then told the defendant to get the car. The defendant did so, and Carl and Robbie dragged Sidnee to the car. She was still passed out when they put her in the car, although the defendant also thought she could already be dead. They then drove to the Beaucoup Creek Bridge, stopping on the bridge midway, and removed Sidnee from the car. As she lay on the ground, Carl told Robbie to turn around. The defendant closed his eyes and heard four gunshots. The defendant and Robbie then pushed Sidnee's body off the bridge into the water. The three left to bury Carl's gun and their clothes.

¶ 9    A few days later, Carl and the defendant returned to the spot where they had thrown Sidnee's body off the bridge. Because her body was floating under the bridge, Carl gave the defendant a cement block and strap to tie around her. The defendant did as instructed, but not wanting to touch her, he tied the block to her arm.

4

¶ 10    The defendant did not know why Carl wanted to kill Sidnee. Carl and Sidnee had dated at one point, but she had broken up with him some two or three months earlier and already had started dating someone else. The defendant further reported that Sidnee had the reputation for being a snitch and she allegedly had snitched on the defendant to their school.

¶ 11    The trial court reminded the defendant that after the reading of the stipulated statement of facts, and without any further evidence from the defendant, it was inevitable that he would be found guilty of the offense of first-degree murder. The defendant did not present any other evidence, and the court accordingly found him guilty. The court also honored the agreed-upon recommendation for a sentence of 60 years, and further noted that it should not be misunderstood that the defendant was pleading guilty.

¶ 12    The defendant argues on appeal that the evidence presented at the stipulated bench trial was insufficient to prove he was guilty of first-degree murder when it was not shown that he had the specific intent to kill Sidnee or that his alleged actions of strangling her caused her death.

¶ 13    When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004); *People v. Givens*, 364 Ill. App. 3d 37, 43, 846 N.E.2d 951, 956 (2005). Even in a stipulated bench trial, the State must still prove the defendant's guilt beyond a reasonable doubt. See *People v. Horton*, 143 Ill. 2d 11, 21, 570 N.E.2d 320, 324 (1991). After a

5

stipulated bench trial in which sufficient evidence is presented, however, factual guilt is a foregone conclusion. *People v. Gonzalez*, 313 Ill. App. 3d 607, 617-18, 730 N.E.2d 534, 544 (2000). Neither a reasonable defendant nor a prosecutor would choose to pursue a stipulated bench trial if the evidence were doubtful. *Gonzalez*, 313 Ill. App. 3d at 617, 730 N.E.2d at 544.

¶ 14 A defendant commits first-degree murder when he kills an individual without lawful justification and he intends to kill that individual. 720 ILCS 5/9-1(a)(1) (West 2010). The State need not prove a defendant's intent to kill by direct evidence. The intent may be inferred from the circumstances surrounding the death. *People v. Givens*, 364 Ill. App. 3d 37, 44, 846 N.E.2d 951, 957 (2005). Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer other connected facts that human experience dictates usually and reasonably follow. *People v. Grathler*, 368 Ill. App. 3d 802, 808, 858 N.E.2d 937, 942 (2006). The defendant believes the evidence here proves that it was Carl's plan to kill Sidnee and that it was Carl who threatened to kill him and Robbie if they did not cooperate. It was also Carl who threatened to kill them if they ever talked about the incident. According to the defendant, he did what Carl told him to do at gunpoint. As the defendant points out, he clearly took Carl's threats seriously, as evidenced by his refusing to talk to the police until assured that Carl was in jail and could not hurt him. Moreover, the defendant asserts he never intended to kill Sidnee. He was only trying to get her to stop moving and yelling. It was Carl who shot her after she had passed out. The defendant points to the fact that the precise circumstances of how Sidnee died were not shown by the autopsy. In fact, he

6

argues, the autopsy did not indicate whether the cause of her death was from being choked, from the gunshots fired by Carl, or from drowning.

¶ 15    While the State does have the burden of proving a defendant's intent in a murder case, that burden is met when the State has established that the defendant voluntarily and willfully committed an act, the natural tendency of which is to cause death or great bodily harm.  *People v. Fickett*, 204 Ill. App. 3d 220, 232, 562 N.E.2d 238, 245 (1990).  Since proof of a defendant's intent to kill can rarely be based on direct evidence, such intent may be implied from the character of the act.  *People v. Givens*, 364 Ill. App. 3d 37, 44, 846 N.E.2d 951, 957 (2005); *Fickett*, 204 Ill. App. 3d at 232, 562 N.E.2d at 245.  A defendant is presumed to intend the natural and probable consequences of his or her acts.  Evidence that the defendant committed a voluntary and willful act which has the natural tendency to cause death or great bodily harm is sufficient to prove the intent required for the offense of murder.  *Givens*, 364 Ill. App. 3d at 44, 846 N.E.2d at 957; *Fickett*, 204 Ill. App. 3d at 232, 562 N.E.2d at 245.

¶ 16    Although the defendant now claims he may not have wanted to kill Sidnee, the sole reason he went to her house with Carl and Robbie in the early morning hours of July 19 was to kill her.  The defendant put his hand over her mouth, and when she broke free, he jumped on her and put a choke hold on her until she passed out.  The act of putting a choke hold on a person until they are unconscious, or possibly even dead, and then helping throw the body off a bridge into the creek below are intentional acts which represented a gross indifference to the life of Sidnee.  A defendant must be presumed to intend the natural and probable consequences of his acts.  Evidence that the defendant

7

committed a voluntary and willful act such as choking, which has the natural tendency to cause death, is sufficient to prove the intent required for the offense of murder. See *Givens*, 364 Ill. App. 3d at 44, 846 N.E.2d at 957; *Fickett*, 204 Ill. App. 3d at 233, 562 N.E.2d at 245. Moreover, the mere fact that Carl had a gun and threatened to use it on the defendant is insufficient to absolve defendant of his actions. The defendant entered Sidnee's house alone. He could have refused to let Carl or Robbie inside, or he could have woken the family, or called the police. At another point, after dragging Sidnee's unconscious body outside, the defendant left for several minutes to get the car. The defendant could have gotten in the car and kept driving, away from the scene. Instead, he drove back to Sidnee's location and then helped put her body in the car. As previously noted, the defendant and Carl were in the same gang. The defendant stated that he would take a bullet for Carl because they were such tight friends and that they would never keep anything from each other. He also admitted to hating snitches and declared he would do bodily harm to someone if they snitched. There was more than sufficient evidence presented to establish the defendant's intent to kill in this instance.

¶ 17    The defendant asserts that Sidnee might not have died from the defendant choking her, and she might have died from the shots fired by Carl, or she might have drowned after being thrown off the bridge. While true, it is immaterial. It has long been established that a person is guilty of murder if his criminal acts contribute to causing the victim's death, even if those acts are not the sole and immediate cause of death. *People v. Crane*, 333 Ill. App. 3d 768, 773, 776 N.E.2d 892, 898 (2002); *People v. Derr*, 316 Ill. App. 3d 272, 276, 736 N.E.2d 693, 698 (2000). The defendant's actions caused, or at

8

least contributed to, Sidnee's death. His act of choking her, be it to her death or simply to unconsciousness, contributed to causing her death, even if that act was not the sole and immediate cause of her death. See *Derr*, 316 Ill. App. 3d at 276, 736 N.E.2d at 698. Again, there was more than sufficient evidence presented to establish that the defendant intended to murder Sidnee and that he caused her death. Considering the evidence in the light most favorable to the prosecution, the inferences accepted by the trial court, acting as finder of fact, are neither inherently impossible nor unreasonable. Instead, the evidence proves the defendant participated in a cold-blooded murder.

¶ 18 The defendant next contends on appeal that the exclusive jurisdiction and automatic transfer statutes of the Juvenile Court Act of 1987 violate the United States and Illinois Constitutions because they treat all 17-year-old minors charged with first-degree murder as adults during prosecution and sentencing, without any consideration of their youthfulness and its attendant characteristics.

¶ 19 We initially note that the constitutionality of a statute is a question of law that is reviewed *de novo*. *People v. Hollins*, 2012 IL 112754, ¶ 13, 971 N.E.2d 504. We have a duty to construe a statute in a manner that upholds its validity and constitutionality if it can be reasonably done. *Hollins*, 2012 IL 112754, ¶ 13, 971 N.E.2d 504. A statute will be upheld under the rational basis test, provided no fundamental right is at issue, if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Hollins*, 2012 IL 112754, ¶ 15, 971 N.E.2d 504.

¶ 20 Under section 5-130(1)(a) of the Juvenile Court Act of 1987 (Act), 17-year-old defendants charged with first-degree murder are statutorily excluded from proceedings

9

under the Act.  705 ILCS 405/5-130(1)(a) (West 2010).  If such a defendant is convicted, the court must sentence the offender to a term of 20 to 60 years or more in prison.  705 ILCS 405/5-130(1)(c)(i) (West 2010); 730 ILCS 5/5-4.5-20(a), 5-8-1 (West 2010).  The legislature enacted the excluded jurisdiction statutes in response to the overall rise in violent juvenile crime.  *People v. J.S.*, 103 Ill. 2d 395, 406-07, 469 N.E.2d 1090, 1096 (1984).  Given that the State has a legitimate interest in curtailing crime and in promoting the safety and welfare of its citizenry, in addition to the fact that no defendant has a constitutional, common law, or statutory right to be treated as a juvenile (see *In re M.I.*, 2013 IL 113776, ¶ 46, 989 N.E.2d 173; *People v. P.H.*, 145 Ill. 2d 209, 223, 582 N.E.2d 700, 706 (1991)), the legislature has the authority to define the limits of juvenile court jurisdiction.  See *People v. J.S.*, 103 Ill. 2d 395, 402, 469 N.E.2d 1090, 1093 (1984).  It is neither arbitrary nor unreasonable for the legislature to require criminal prosecution and sentencing for older juveniles charged with the worst crimes.  *P.H.*, 145 Ill. 2d at 232-33, 582 N.E.2d at 711.  The legislature rationally determined that removing such minors from the shelter of the juvenile system would better protect the public.  Accordingly, our courts have determined that excluded jurisdiction provisions comport with both substantive and procedural due process.  See, *e.g.*, *People v. J.S.*, 103 Ill. 2d 395, 469 N.E.2d 1090 (1984).  See also *People v. Patterson*, 2014 IL 115102, 25 N.E.3d 526; *People v. Harmon*, 2013 IL App (2d) 120439, 26 N.E.3d 344; *People v. Willis*, 2013 IL App (1st) 110233, 997 N.E.2d 947.

¶ 21    Similarly, statutorily excluding 17-year-old homicide defendants from juvenile court does not constitute cruel and unusual punishment under the eighth amendment of

the United States Constitution or violate the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The automatic transfer provision governs only the procedure to be used for adjudicating the culpability of the juvenile under the criminal code, reflecting a legislative determination that certain minors are not eligible for the administrative scheme of the juvenile court. *Harmon*, 2013 IL App (2d) 120439, ¶¶ 55, 62, 26 N.E.3d 344. It decides which forum will hear a juvenile defendant's case; it does not determine a juvenile defendant's specific sentence. *In re M.I.*, 2013 IL 113776, ¶ 44, 989 N.E.2d 173; *In re M.C.*, 319 Ill. App. 3d 713, 719, 745 N.E.2d 122, 127 (2001). The determination that a juvenile's case will not be tried in juvenile court obviously impacts the severity of the potential sentence, but it does not become part of the sentencing process. Rather, the transfer decision occurs before a finding of guilt, and thus neither constitutes punishment nor imposes a penalty. See, *e.g.*, *People v. Harmon*, 2013 IL App (2d) 120439, 26 N.E.3d 344; *People v. Johnson*, 2013 IL App (5th) 110112, 998 N.E.2d 185. While the cases which the defendant relies upon may prohibit the imposition of the harshest penalties upon juveniles in certain circumstances, they do not justify departure from the principle that juveniles have no constitutional or common law right to adjudication in juvenile court. See *Patterson*, 2014 IL 115102, ¶¶ 104-06, 25 N.E.3d 526; *Harmon*, 2013 IL App (2d) 120439, ¶¶ 59-62, 26 N.E.3d 344. We, too, recognize and share our Illinois Supreme Court's concern over the absence of any judicial discretion with respect to the automatic juvenile transfer provision, given the possible effect of the unique qualities and characteristics of youth on a juvenile's judgment and actions. See *Patterson*, 2014 IL 115102, ¶ 111, 25 N.E.3d 526. Until the legislature responds,

11

however, and reevaluates the automatic transfer provision in light of current scientific and sociological evidence indicating a need for the exercise of judicial discretion in determining the appropriate setting for proceeding in these types of juvenile cases, we are bound to follow the law as it exists today.

¶ 22    For his third point on appeal, the defendant contends his sentence is excessive given that he just turned 17 years old, his lack of prior criminal history, his secondary role in the offense where he was not the mastermind, and his strong potential for rehabilitation.    The defendant further asserts he was denied effective assistance of counsel when counsel agreed with the State to a maximum sentence of 60 years, failed to provide any mitigating evidence, advised the defendant not to give a statement in allocution, and failed to file a motion to reconsider sentence on his behalf.  The defendant also believes the trial court erred in simply adopting the parties' agreed-upon recommendation of 60 years when the defendant had not pled guilty.  The defendant forgets, however, that he was charged with a murder so heinous that he was eligible for natural life in prison (see 730 ILCS 5/5-8-1 (West 2010)), and notice was given of the State's intention to seek just such a sentence.  In fact, the defendant was charged with numerous other offenses, including multiple counts of murder, aggravated kidnapping, home invasion, residential burglary, and concealment of a homicidal death.  Many of these charges required mandatory consecutive sentences.  The defendant could have received natural life for murder plus as much as 75 years for aggravated kidnapping and home invasion.  One of the benefits the defendant received in exchange for his agreement to a stipulated bench trial was the State's agreement to only seek a prison sentence of 60

12

years for Sidnee's murder and dismissal of all other charges which were mandatorily consecutive. A sentence within the statutory limits for an offense will only be deemed excessive and the result of an abuse of discretion when the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense. See, *e.g.*, *People v. Stacey*, 193 Ill. 2d 203, 209-10, 737 N.E.2d 626, 629 (2000). Here, the trial court considered all the facts before sentencing the defendant to 60 years, a sentence which was a major reduction in the sentence the defendant would have been likely to serve should he have been convicted on the other counts with which he was originally charged. Given the circumstances, the defendant's sentence was well within the spirit of the law. See *People v. Fern*, 189 Ill. 2d 48, 53-54, 723 N.E.2d 207, 209-10 (1999).

¶ 23    The defendant also argues that he received ineffective assistance of counsel with respect to his sentencing. After the defendant's motion to suppress his confession was denied, the defendant and his attorney decided to enter into a stipulated bench trial. A stipulated bench trial is a legal fiction created solely to give the defendants the benefit and convenience of a guilty plea while avoiding the consequences of waiver or forfeiture. *Gonzalez*, 313 Ill. App. 3d at 617, 730 N.E.2d at 544; *People v. Cunningham*, 286 Ill. App. 3d 346, 348, 676 N.E.2d 998, 1000 (1997). One of the huge benefits the defendant received in exchange for his agreement to a stipulated bench trial was the State's agreement to seek only 60 years in prison for Sidnee's murder, instead of life, as well as the dismissal of all other charges against him. Contrary to the defendant's assertions, defense counsel negotiated the dismissal of numerous counts and allowed the defendant

13

to escape a natural-life-plus sentence. Pursuing the dismissal of numerous charges against the defendant and obtaining a lesser sentence, even though a lengthy one, is valid trial strategy. Defense counsel's strategic choices, made after investigation of the law and the facts, are unassailable in this instance. See *People v. Ramsey*, 239 Ill. 2d 342, 433, 942 N.E.2d 1168, 1218 (2010).

¶ 24 For his final point on appeal, the defendant argues he was required to register as a sex offender even though the sentencing court never determined that Sidnee's murder was sexually motivated. See *People v. Black*, 394 Ill. App. 3d 935, 942, 917 N.E.2d 114, 120 (2009). The defendant admits though that, while he is not required to register under Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2010)), he will be required to register under the Child Murderer and Violent Offender Against Youth Registration Act (VOYRA) (730 ILCS 154/1 *et seq.* (West 2010)). See *People v. Craig*, 374 Ill. App. 3d 375, 377, 871 N.E.2d 273, 275 (2007). The defendant is correct that the sentencing court made no finding that Sidnee's murder was sexually motivated. He is also correct that he should be required to register under VOYRA if not under SORA. Accordingly, we remand this cause to the sentencing court for a determination as to whether the offense was sexually motivated and under which provision the defendant is required to register. See *Black*, 394 Ill. App. 3d at 942-43, 917 N.E.2d at 120; 730 ILCS 154/86 (West 2010).

¶ 25 For the aforementioned reasons, we affirm the judgment of the circuit court of Perry County but remand this cause for the trial court's determination as to whether the murder was sexually motivated.

14

¶ 26    Affirmed in part and remanded in part.

2015 IL App (5th) 120401

NO. 5-12-0401

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Perry County. |
| | ) | |
| v. | ) | No. 10-CF-82 |
| | ) | |
| JAMES GLAZIER, | ) | Honorable |
| | ) | James W. Campanella, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**      July 16, 2015
**Motion to Publish Granted:**   August 20, 2015
**Opinion Filed:**        August 20, 2015

_____

**Justices:**        Honorable Judy L. Cates, P.J.

            Honorable Richard P. Goldenhersh, J., and
            Honorable Melissa A. Chapman, J.,
            Concur

_____

**Attorneys**     Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy
**for**       Defender, Jean Park, Assistant Appellate Defender, Office of the State
**Appellant**     Appellate Defender, First Judicial District, 203 N. LaSalle, 24th Floor,
          Chicago, IL 60601

_____

**Attorneys**     Hon. David Stanton, State's Attorney, Perry County Courthouse, P.O. Box
**for**       377, Pinckneyville, IL 62274; Patrick Delfino, Director, Stephen E. Norris,
**Appellee**     Deputy Director, Sharon Shanahan, Staff Attorney, Office of the State's
          Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois Highway
          15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____